Thomas A. CAMPOS, Plaintiff-Appellee,

v.

Les GUILLOT, et al., Defendants,

John Knox, Mayor of the City of
Missouri City, Texas, et al.,
Defendants-Appellants.

No. 83–2436.

United States Court of Appeals,
Fifth Circuit.

Oct. 15, 1984.

Olson & Olson, William A. Olson, Jr.,
Joseph G. Rollins, Houston, Tex., for de-
fendants-appellants.

Lopez, Medina, Ramirez, Torres & Velasquez, Jose A. Medina, Armando Lopez, Houston, Tex., for plaintiff-appellee.

Before GEE, POLITZ and RANDALL, Circuit Judges.

GEE, Circuit Judge:

The overall issue on this appeal is whether Thomas Campos, a public employee, suffered infringement of a liberty interest in the course of his discharge from employment. Because of errors occurring in the course of trial, we must reverse the judgment favorable to him rendered by the district court.

*Facts*

Mr. Campos is the former police chief of Missouri City, a suburb of Houston. In July 1980, a local newspaper article suggested that Campos had improperly caused a surveillance to be conducted by the police department for his own private purposes, one of his former wife in connection with a domestic dispute. In consequence, the municipal authorities carried out an internal investigation of the police department through the city attorney, who reported the possibility of serious problems there. Further investigation by the city manager and his assistant, including interviews with police officers, appeared to establish the presence of problems, unrest and dissatisfaction with Mr. Campos' administration of the department, despite his personal popularity there and with the local citizenry. A memorandum from the assistant manager outlined these findings and recommended that Campos be given an opportunity to respond to them. On September 23 and 24, the manager and his assistant discussed the charges privately with Campos on automobile rides; and in a private and confidential memorandum written on September 24, before the second meeting with Campos, the manager recommended to the city council that Campos be asked to resign.

The following day, Campos was given a list of the reasons for that recommendation, reasons that we set out in the margin.[1] Campos requested further specifics,

1. "There is information available strongly showing that Chief Campos directed the use of City personnel and city equipment for purposes other than official police business.
    "1. Chief Campos claims that the surveillance of his wife was part of a narcotics investigation and was justifiable.
    "2. All officers involved feel it was personal business because:
    a. Officers were not told it was a narcotics investigation.
    b. Procedure for narcotics investigation was not followed.
    "3. Chief told Mayor and City Manager that it was strictly a narcotics investigation.
    "4. Chief told reporter that no surveillance had been done.
    "5. Chief told one of the officers involved that he had talked to other Chiefs and that they advised him to deny the surveillance and to get with the officers involved and see if they would support his story.
    "6. Chief told one officer involved: 'We could always claim that it was a narcotics investigation.'
    "7. Even if surveillance was not for personal gain but was a police matter, extremely poor judgment was used in being directly involved in a criminal investigation of his wife. This is against all accepted rules of proper police procedure.

"There is available evidence which shows an inability of Chief Campos to adequately perform as Chief Administrator of the Department.
    "1. The vast majority of supervisory personnel, plus many line personnel claim to have lost confidence in Chief's ability to manage and direct the Police Department.
    a. Has demonstrated a lack of administrative and supervisory skills.
    b. Has lost the ability to manage public programs and develop new ones.
    c. Failure to demonstrate leadership of the Department.
    d. Has demonstrated a failure to keep abreast of new trends in law enforcement and police administration by not attending schools, seminars and conferences.
    e. Has demonstrated a lack of truthfulness with his top personnel.
    f. Has demonstrated a double standard by making personnel strictly adhere to rules and regulations, but does not conform to them himself.
    g. Has instructed personnel not to mention his name in any report even if he was involved because he did not want to go to Court.
    "2. Gives his superiors a strong impression that he is more concerned and spends more time on narcotics investigations than on the

declining to attend a meeting scheduled for September 26 with the city manager or a closed session of the city council set for September 29 until these were furnished. The next day he was furnished copies of the earlier memoranda in the investigation and notified of a proposed executive session of the council scheduled for October 2 at which he was to be heard regarding the charges. At that meeting there was further discussion of the charges, with Campos requesting further names, dates, and specifics.

In response, Campos was offered access to the police department files and provided with a memorandum giving further details as to some of the charges. Further discussion of the charges, and an interview with police officers, took place at a closed council meeting on October 9, with Campos present. At another such session the following day, Campos was asked to resign. He refused and demanded a public hearing. At this, the meeting was thrown open to the public, many of whom spoke in support of Mr. Campos. Nevertheless, on motion and second, the council voted to discharge him. This action followed.

### The Law

■ This is well stated by Judge Garwood in our recent decision of *Wells v. Hico Independent School District*, 736 F.2d 243, 256–7 (5th Cir.1984):

To establish a liberty interest, an employee must demonstrate that his governmental employer has brought false charges against him that "might seriously damage his standing and associations in his community," or that impose a "stigma or other disability" that forecloses "freedom to take advantage of other employment opportunities." *Board of*

administration and supervision of the entire Department.
"3. Does not keep informed of the status of programs and has not set established goals and objectives set out by each division or when they have been obtained.
"4. Spends more time away from office or in secretary's office than working with top officers.

*Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). *See Wells v. Doland*, 711 F.2d 670, 676 (5th Cir.1983). Mere proof that nonrenewal might make an individual less attractive to other employers does not, by itself, implicate a liberty interest. *Roth*, 408 U.S. at 574 n. 13, 92 S.Ct. at 2707 n. 13. *Dennis v. S. & S. Consolidated Rural High School District*, 577 F.2d 338, 340 (5th Cir.1978). ("[M]ere nonrenewal of a teacher's contract is not such a blight upon his good name, reputation, honor, or integrity as to constitute a deprivation of liberty.")[16] Nor is reputation alone a constitutionally protected interest, even though state law may create an action for defamation. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Rather, the stigma must be imposed by the state in connection with its denial of a right or status previously recognized by state law, such as the nonrenewal at issue here, though loss of a property interest (such as tenured employment) is not required. *Dennis*, 577 F.2d at 341–42; *Wells*, 711 F.2d at 676 (the stigmatization must be "in or as a result of the discharge process").[17] The employee must also show that "the governmental agency has made or is likely to make the ... stigmatizing charges public 'in any official or intentional manner, other than in connection with the defense of [related legal] action.'" *Ortwein v. Mackey*, 511 F.2d 696, 699 (5th Cir.1975); *Wells*, 711 F.2d at 676 n. 8. Moreover, the employee must not have received a meaningful hearing to clear his name.[18] *Id.* The charges must be false. *Codd v. Velger*, 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977).

---

[16] Moreover, for a charge to be stigmatizing it must be worse than merely adverse; it must be

"5. Over-involvement (sic) in incidents in the field when the supervisor on the scene is adequately controlling the situation.
"6. Chief is unaware of any morale problem within the Department. Interviews with 21 persons within the Department reveal 20 people feel that morale is extremely low— no higher than 2 on a 1–10 scale."

such as would give rise to "a 'badge of infamy,' public scorn, or the like." *Ball v. Board of Trustees of Kerrville Independent School District,* 584 F.2d 684, 685 (5th Cir.1978), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1535, 59 L.Ed.2d 788 (1979). *See also Burris,* 713 F.2d 1087 at 1092; *Huffstutler v. Bergland,* 607 F.2d 1090, 1092 (5th Cir.1979); *LaBorde v. Franklin Parish School Board,* 510 F.2d 590, 593 (5th Cir.1975); *Robertson v. Rogers,* 679 F.2d 1090, 1092 (4th Cir.1982); *Press v. Board of Regents,* 489 F.Supp. 150, 155 (M.D.Ga.1980).

[17] But it is not essential that the stigmatizing governmental charges *actually cause* the nonrenewal, only that they occur in connection with, and be closely enough related to, the employee's nonrenewal or discharge so as to cause that action to be stigmatizing. *Owen v. City of Independence,* 445 U.S. 622, 633 n. 13, 100 S.Ct. 1398, 1406 n. 13, 63 L.Ed.2d 673 (1980); *Marrero v. City of Hialeah,* 625 F.2d 499, 519 (1980).

[18] The remedy for a deprivation of liberty is a name-clearing hearing before the governing body. *White v. Thomas,* 660 F.2d 680, 685 (5th Cir.1981), *cert. denied,* 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148 (1982) (plaintiff to be afforded only opportunity to refute charge). It is not necessary that the hearing occur prior to publication of the stigmatizing charges. *In re Selcraig,* 705 F.2d 789, 796 (5th Cir.1983).

To the above statement we need add nothing; it outlines law that is dispositive of the appeal. We turn now to the points advanced for reversal by appellants.

### Publication of Charges

■ As our above statement recognizes, a discharged public employee is entitled to a "name-clearing" hearing before the governing body that discharged him whenever stigmatizing charges have been made in connection with his discharge, when no meaningful public hearing was conducted pre-discharge, and when he requests such a hearing.

■ Appellants complain that the charge of the court to the jury omitted an essential element of the legal formulation stated above.[2] We agree. Nowhere in the court's instructions to the jury is it advised that unless the stigmatizing matter is made public by the employer in connection with the discharge no "name-clearing" proceeding is required. The jury was therefore left to believe that even private charges, carefully kept confidential by the charging

body in deference to Mr. Campos, could give rise to a right in him to a name-clearing session. That is not the law.

On the record before us, it appears that no public disclosure of the charges against Chief Campos was made before he demanded that further proceedings in connection with his discharge be conducted in public. If so, he accrued no right to a name-clearing proceeding. If, as it appears, it was Mr. Campos who demanded that the charges be made public, it was his own hand that was on the dagger. Whatever matter of arguable relevance became public as a result of this demand became so at Mr. Campos' demand. This is not the set of circumstances that the law envisions, one in which the discharged employee is publicly defamed in connection with his discharge by matter deliberately released by his former employer without an opportunity on his part to respond in public. On the present record, nothing of that sort occurred.

Here by contrast, the employer having apparently made strenuous efforts to prevent the charges against the employee from becoming public, the employee demanded that further proceedings be conducted at a public meeting. It thus appears that Mr. Campos himself, rather than the city, was the cause of whatever public airing the charges against him and his discharge received. In such circumstances, the entire omission of the "publication" element from the court's charge may well have caused the jury to return a verdict against the defendants based on charges that they had sought to keep confidential and never published—until the plaintiff demanded it. This was reversible error.

Because the trial appears to have been conducted under this serious misapprehension of the law, both by counsel for Mr. Campos and by the court, we conclude that the interests of justice would be better served by a remand to permit evidence of publication—if there be any—to be brought forward than by a rendition.

**2.** Objection was made on this ground, in timely     manner.

### Other Points

Most of the other claims for reversal and points likely to recur on remand are covered by the passage from *Wells* quoted above, to which we refer the court and the parties. In particular, since the object of such a hearing is to insure that the employee's defense of his actions receives the same public consideration as did the employer's charges against him, it is the employer—in this case the city council—before whom such a hearing, if any, should be had. At that stage of matters, no impartiality is required of the employer, which will already have acted to discharge the employee in the usual case: only that the hearing be conducted in such a manner that the employee has a fair opportunity to make his defense.[3]

REVERSED and REMANDED.

---

**3.** We note in passing that the charges set out in footnote 1, which would probably withstand a motion for more definite statement in court, seem to furnish Mr. Campos adequate notice of the reasons for his discharge. We note also that neither the statement of counsel that provoked them nor the court's remarks regarding insurance are likely to recur on remand, hence we need not discuss them.