Larry WILLBANKS, Plaintiff,

v.

SMITH COUNTY, TEXAS, et al., Defendants.

Civ. A. No. TY–84–235–CA.

United States District Court,
E.D. Texas,
Tyler Division.

March 31, 1987.

Clifton L. Holmes, Longview, Tex., for plaintiff.

Tracy Crawford, Tyler, Tex., for defendants.

## MEMORANDUM OPINION

JUSTICE, Chief Judge.

On October 31, 1986, following a three-day trial, the jury hearing the above-entitled and numbered civil action returned a verdict generally favoring plaintiff Larry Willbanks (Willbanks) in his liberty interest claim against defendants. As more fully set forth below, it is found that the jury's answers to the interrogatories support a judgment in favor of plaintiff. However, a partial new trial must be conducted for the sole purpose of determining the supervisory liability of defendant Frank Brunt.

The factual background of this action is as follows: Willbanks was employed as a deputy sheriff in the Smith County Sheriff's Department beginning in 1981. In 1983, he became a suspect in a series of thefts of saddles and cattle. His superiors in the sheriff's department initiated an investigation, during the course of which the charges against Willbanks were made known to persons outside the department. On February 17, 1984, defendant Frank Brunt, then sheriff of Smith County, terminated Willbanks' employment because of allegations of his involvement in the thefts in question, though Sheriff Brunt did not reveal this rationale to Willbanks. No indictment was ever brought against Willbanks. At no time was a hearing provided for Willbanks to contest the reasons for his dismissal, or to clear his name in relation to the criminal allegations. On May 1, 1984, Willbanks filed suit against the defendants, alleging that they had violated his due process rights by denying him an opportunity to clear his name.

"Texas law gives sheriffs, and other elected county officials, virtually unbridled authority in hiring and firing their employees." *Irby v. Sullivan,* 737 F.2d 1418, 1421 (5th Cir.1984). "[D]eputy sheriffs have no legal entitlement to their jobs as public employees; the sheriff may fire them for many reasons or for no articulable reason at all." *Barrett v. Thomas,* 649

F.2d 1193, 1199 (5th Cir.1981), *cert. denied* 456 U.S. 925, 102 S.Ct. 1969, 72 L.Ed.2d 440 (1982). Willbanks, therefore, lacked a constitutionally protected property interest in continued employment. *Irby v. Sullivan,* 737 F.2d at 1422.

Nevertheless, the absence of a protected property interest does not preclude a finding that Willbanks had a protected liberty interest. *Wells v. Doland,* 711 F.2d 670, 676 (5th Cir.1983). "The liberty protected by the due process clause encompasses an individual's freedom to work and earn a living." *Id.* Though reputation alone is not a constitutionally protected interest, *White v. Thomas,* 660 F.2d 680, 684 (5th Cir.1981), when a public employer, in terminating an employee, "makes charges against him that might seriously damage his standing in the community or otherwise impose a stigma on the employee that forecloses his freedom to take advantage of other employment opportunities, the employee's liberty interest may be implicated and he should be granted the opportunity to clear his name." *Wells v. Doland,* 711 F.2d at 676 (citations omitted).

To establish a liberty claim, a plaintiff must prove by a preponderance of the evidence: (1) that he was stigmatized by false charges; (2) that he was stigmatized in or as a result of the discharge process; (3) that the charges were made public; and (4) that he was denied a meaningful hearing to clear his name. *Wells v. Doland,* 711 F.2d at 676. Following the presentation of evidence in this case, the jury returned a verdict in Willbanks' favor, and awarded compensatory and exemplary damages totalling $25,000.[1] Each of the four liberty interest requirements will be addressed in turn, followed by consideration of the jury's award of damages.

As to the first element of the liberty interest claim (*i.e.,* whether the claimant was stigmatized by false charges), Willbanks presented evidence that the allegations against him were unfounded, and that they could, and did, cast a stigma on his reputation. The jury found that Willbanks had proved that the charges were false, and that such charges tended to cast a stigma on his reputation as a law enforcement officer. *See* appendix, jury answers to interrogatories numbered 1 and 2. The jury finding in favor of Willbanks on this point is unequivocal, and is supported by the evidence in the case.

The second element of a liberty interest claim (that is, whether the plaintiff was stigmatized in or as a result of the discharge process) is crucial, in that it distinguishes a constitutional claim of a liberty interest violation from a non-constitutional action based on the common law of libel or slander. Loss of reputation alone, apart from some more tangible interest, does not implicate any property or liberty interest sufficient to invoke the procedural protection of the due process clause. *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). Hence, in order to make out a liberty interest claim, Willbanks' loss of reputation must have occurred as a result of, or in conjunction with, his discharge from employment. *Wells v. Hico Independent School District,* 736 F.2d 243, 256 (5th Cir.1984), *cert. denied,* 473 U.S. 901, 106 S.Ct. 11, 87 L.Ed.2d 672 (1985). In this case, it is uncontroverted that Willbanks' termination was based upon the stigmatizing charges. This satisfies the requirement that Willbanks show more than mere loss of reputation; specifically, that he prove that defendants subjected him to "stigma-plus." *See Dennis v. S & S Consolidated Rural High School District,* 577 F.2d 338, 341–43 (5th Cir.1978).

Despite this fact, defendants argue that the second element has not been satisfied. They contend that when Sheriff Brunt dismissed Willbanks, the reasons for the termination were not released, and that the stigmatizing charges were divulged only in the process of a criminal investigation. Defendants conclude, therefore, that Willbanks' loss of reputation did not occur in conjunction with, or as a result of, his discharge from employment.

1. The verdict of the jury is set forth as an appendix to this memorandum opinion.

Contrary to defendants' assertion, the loss of reputation and the loss of employment need not occur simultaneously. In other words, "[i]t is not essential that the stigmatizing governmental charges *actually cause* the non-renewal [or termination], only that they occur in connection with, and be closely enough related to, the employee's non-renewal or discharge as to cause that action to be stigmatizing." *Wells v. Hico Independent School District,* 736 F.2d at 256 n. 17 (emphasis in original). It is evident from this language that temporal proximity of the reputational harm and dismissal is less important than the perceived connection of the two events from the perspective of persons outside the governmental agency.[2]

In this case, Willbanks elicited uncontroverted testimony that the sole reason given by defendants to anyone for his termination was the false allegation of criminal activity. Thus, from the perspective of those persons learning of the allegations against Willbanks, the stigmatizing charges inevitably emerged as the reason for Willbanks' dismissal. Based on this record, it is found that Willbanks satisfied the "in connection with" requirement as a matter of law.

■ The third requirement is that the stigmatizing charges be made public. A liberty interest is not implicated unless false charges have been officially or intentionally divulged to persons outside the governmental agency employing the claimant, or are likely to be so divulged. *See Campos v. Guillot,* 743 F.2d 1123, 1126 (5th Cir.1984); *Wells v. Hico Independent School District,* 736 F.2d at 256.

■ As explained in paragraph thirty-six of the instructions to the jury, "[t]o publicly disclose means to 'publish,' that is, to make known to people generally. However, if defendants divulged the stigmatizing charges concerning the plaintiff in le-

gal proceedings, that act alone does not constitute public disclosure." *See Campos v. Guillot,* 743 F.2d at 1126.

Further, in response to a note from the jury requesting clarification of the phrase, "to make known to other persons generally," the jury was instructed as follows:

Publication of defamatory matter is its intentional communication to one other than the person defamed. It is not necessary that the defamatory matter be communicated to a large or even substantial group of persons. It is enough that it be communicated to a single individual other than the person defamed.

*See* Restatement of Torts § 577 (1938). *See also, Kelley v. Rinkle,* 532 S.W.2d 947, 948 (Tex.1976) (adopting Restatement definition).

In this case, Willbanks alleged that defendants Dale Geddie and John Whitham, deputy sheriffs serving under defendant Brunt, disclosed false allegations about Willbanks to several persons. The jury found that defendant Dale Geddie "officially or intentionally published" false charges against Willbanks, and that defendant John Whitham did not publish such charges. *See* appendix, jury answers to interrogatories numbered 3 and 4.[3] The jury further found that defendant Sheriff Brunt was not aware of Geddie's divulgement, but that he should have been aware, "in the proper exercise of his duties." *See id.,* jury answer to interrogatory no. 6.

Defendants have raised two arguments with respect to the jury's findings regarding "publication" of the stigmatizing charges against Willbanks. First, defendants object to the definition of "public disclosure" given to the jury, and argue that Geddie's action could not amount to disclosure under a proper instruction. Second, if defendant Geddie's divulgement is found to constitute publication, defendants assert that his actions may not be imputed to any other defendant for purposes of liability

---

**2.** Furthermore, it would be anomalous to require simultaneously for loss of reputation and dismissal when such is not required for "publication" and dismissal. *See Wells v. Hico Independent School District,* 736 F.2d at 256 (plaintiff must prove that charges have already been

made public, or are likely to be made public in the future).

**3.** On the basis of this finding, the claim against defendant John Whitham must be dismissed.

under 42 U.S.C. § 1983. Each of these arguments will be examined in turn.

The case law as to the proper reach of the publication requirement is largely inapplicable to the present situation. In the published opinions regarding liberty interest claims, either the publication is explicit and widely circulated, *see White v. Thomas,* 660 F.2d at 684 (press release); *Dennis v. S & S Consolidated Rural High School District,* 577 F.2d at 339 (statements at public hearing); or, in cases finding no publication, the stigmatizing charge was not communicated to persons outside the governmental agency, *see Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1975); *Campos v. Guillot,* 743 F.2d 1123, 1126 (5th Cir.1984); or the claimant failed to allege publication, *see Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 547 n. 13, 105 S.Ct. 1487, 1496 n. 13, 84 L.Ed.2d 494 (1985). These cases do not comprehend the present situation, where the stigmatizing charges were intentionally or officially divulged to a relatively small number of persons.

 Two considerations support the instruction given the jury, *viz.,* that communication of the false charges to any person outside the governmental agency constitutes "public disclosure" for purposes of a liberty interest claim. First, the harm to the employee's reputation is equally grave, whether the stigmatizing allegation travels by word-of-mouth or is revealed by press release. Verbal rumors may even be the more pernicious, in that when allegations are later proven to be false, rumors are less susceptible to public refutation. It follows that thorough-going protection of the reputation component of the liberty interest necessitates that governmental employers assume responsibility for small-scale intentional "leaks," as well as for information imparted at large-scale news conferences. Furthermore, since loss of employment remains an essential element of the liberty interest claim, the definition of publication given to the jury does not effectively enlarge the constitutional protection of liberty so that all common law claims of reputational harm are thereby encompassed. The requirement of proving "stigma-plus" remains undiluted. For these reasons, it is found that the instructions to the jury regarding publication were proper.

 Defendants further assert that the jury's imputation of Geddie's "leak," to Sheriff Brunt amounts to the imposition of vicarious liability, and is, therefore, improper. The actions of deputy Geddie leading to Willbanks liberty interest injury may not be imputed to Sheriff Brunt merely on the basis of *respondeat superior. Baskin v. Parker,* 602 F.2d 1205 (5th Cir.1979). In order to be liable under § 1983, "[s]upervisory officials need not have participated personally in an act ..., but the plaintiff must show some causal connection between an act of the official and the alleged violation." *Henzel v. Gerstein,* 608 F.2d 654, 658 (5th Cir.1979). The causal connection may consist of a supervisor's failure to train, but the supervisory failure must amount to more than mere negligence; a jury finding of gross negligence or conscious indifference is required. *See Languirand v. Hayden,* 717 F.2d 220, 227 (5th Cir.1983); *Kibbe v. City of Springfield,* 777 F.2d 801, 803–06 (1st Cir.1985), *cert. dismissed,* — U.S. —, 107 S.Ct. 1114, 94 L.Ed.2d 293 (1987). *See also City of Springfield v. Kibbe,* — U.S. —, 107 S.Ct. 1114, 1121, 94 L.Ed.2d 293 (1987) (dissent from dismissal of certiorari) ("a jury should be permitted to find that the municipality's inadequate training 'caused' the plaintiff's injury only if the inadequacy of the training amounts to deliberate indifference or reckless disregard for the consequences.").

In the case *sub judice,* the jury found that Brunt was not aware of his deputy's divulgement of the allegations against Willbanks. Hence, as a supervisory official, Brunt could not be liable for Willbanks' constitutional injury, unless he was grossly negligent or consciously indifferent in remaining unaware of Geddie's disclosure. However, paragraph forty-four of the instructions to the jury permitted the jury to find liability against Brunt for merely negligent failure to be aware of Geddie's dis-

closure.[4] The jury interrogatories do not cure this infirmity. Specifically, interrogatories numbered six and eight should have permitted an affirmative answer only if the jury found that Brunt's supervisory failure rose to the level of gross negligence or conscious indifference.[5] In the absence of such limitations, the jury's award of compensatory and punitive damages against Brunt may not stand.

▮▮▮▮ Pursuant to Fed.R.Civ.P. 59, a new trial must be held in order to determine whether Brunt's alleged supervisory failure constitutes gross negligence or conscious indifference. However, retrial of the entire case is not necessary because the other elements of the verdict are completely distinct and separable from the jury's finding of Brunt's supervisory liability.[6] See Fed.R.Civ.P. 59(a) (allowing grant of new trial "on all or part of the issues"); *Nissho-Iwai Co., Ltd. v. Occidential Crude Sales, Inc.*, 729 F.2d 1530, 1538–39 (5th Cir.1984); 11 C. Wright and A. Miller, Federal Practice and Procedure § 2814 (1973).

▮▮▮▮ Having concluded that the false charges against Willbanks were "published," it must be determined whether Willbanks satisfied the fourth, and final requirement, that he was denied a meaningful opportunity to clear his name. Defendants presented no evidence that they provided Willbanks an opportunity to clear his name. In explanation, defendants contend that no hearing was offered because one was not requested by plaintiff. This argument is unpersuasive, since defendants did not make Willbanks aware that his dismissal was associated with criminal allegations, even though Willbanks specifically requested the reasons for termination. Based on this record, no question exists regarding whether Willbanks was denied an opportunity to clear his name. *See In re Selcraig*, 705 F.2d 789, 796 (5th Cir.1983) (the public employer must "make known to the stigmatized employee that he may have an opportunity to clear his name upon request"); *Eames v. City of Logan, Utah*, 762 F.2d 83, 86 (10th Cir.1985) (failure to request a hearing does not defeat claim);

4. Paragraph forty-four of the instructions to the jury reads as follows:

> 44. In this case, the plaintiff has claimed that defendants John Whitham and Dale Geddie, while in the course of their duties as Deputy Sheriffs, officially or intentionally made public false charges against him that stigmatized his professional reputation. If you find that plaintiff has proved such allegations by the preponderance of the evidence, and if you also find that plaintiff has proved, by the same standard of proof, that: (1) defendant Frank Brunt was aware of such deputies' alleged conduct, or in the proper exercise of his duties *reasonably* should have been aware of it; (2) that a reasonable person in his position would have anticipated that by such conduct defendants John Whitham and Dale Geddie would cause damage to the professional reputation and other harms to plaintiff; (3) that defendant Brunt *failed properly to supervise or discipline* the officers of his department to prevent such *conduct on their part*; and that (4) defendants Whitham and Geddie actually did such damages and harms to plaintiff by allegedly making false charges against him, then you may find that defendant Brunt is liable to the plaintiff for such injuries as he suffered, if any, because he did not afford plaintiff a "name clearing" hearing. (Emphasis added).

Defendants' counsel objected to this instruction in a timely fashion, asserting that it "adopts a negligence standard and applies it to the sheriff Frank Brunt." Record of proceedings, objections to the court's instructions to the jury, October 29, 1986, at 39. The objection was overruled. *Id.*

5. In interrogatory number six, the jury was asked, "Did plaintiff prove that defendant Frank Brunt, in the proper exercise of his duties, reasonably should have been aware that deputies Whitham or Geddie, or both, were intentionally and publicly publishing such allegedly false charges relating to plaintiff?" The jury answered: "He reasonably should have been aware." In interrogatory number eight, the jury was asked: "Did plaintiff prove that defendant Frank Brunt failed properly to supervise or discipline such deputy (or deputies) to prevent the endangering of plaintiff's constitutional rights?" The jury answered: "He failed properly to supervise."

6. Specifically, the jury findings that Geddie published the allegations against Willbanks, that Whitham did not so publish, and that Brunt was not aware of the publication will be allowed to stand. Furthermore, the jury's determination that Willbanks suffered compensatory damages totalling $23,000.00 will not be set aside, though the award of $1,000.00 in punitive damages against Brunt must be resubmitted at retrial.

*cf. Doe v. United States Department of Justice,* 753 F.2d 1092 (D.C.Cir.1985) (reversing trial court's dismissal of liberty interest claim based on plaintiff's alleged failure to request name-clearing hearing). Acceptance of defendants' analysis would encourage employers to withhold the reasons for termination from employees. Such an incentive hinders "forthright and truthful communication between employer and employee," *Bishop v. Wood,* 426 U.S. 341, 349, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976), and undercuts full protection of liberty interest rights.[7]

Based on its findings in favor of Willbanks, the jury proceeded to determine compensatory and exemplary damages. *See* appendix, jury answers to interrogatories numbered 13 and 14. Defendants contend that the sole remedy available to Willbanks was an opportunity to clear his name, even though Willbanks presented evidence that the defendants' denial of his due process rights caused significant damage to his reputation and his ability to obtain employment as a law enforcement officer.

 In order to receive compensation for a violation of due process, "the plaintiff must present evidence that [ ]he has incurred actual compensatory damages flowing from the loss of procedural rights." *Wheeler v. Mental Health and Mental Retardation Authority of Harris County, Texas,* 752 F.2d 1063, 1070 (5th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 78, 88 L.Ed.2d 64 (1985). Damages for due process violations in a liberty interest case may not include back pay or reinstatement, since the liberty interest protects only reputation, as opposed to a property interest in continued employment. *See Dennis v. S & S Consolidated Rural High School Dis-*

*trict,* 577 F.2d at 344. Nevertheless, damages for mental anguish and reputational harm directly caused by the denial of due process may be awarded. *See Wheeler v. Mental Health and Mental Retardation Authority of Harris County, Texas,* 752 F.2d 1063, 1072 (5th Cir.1985) (awarding damages for mental and emotional distress); *Wilson v. Taylor,* 658 F.2d 1021, 1032 (5th Cir.1981) (injury to reputation and career caused by due process violation admissible on question of damages); *Miller v. City of Mission, Kansas,* 705 F.2d 368, 374 n. 4 (10th Cir.1983) (injury to reputation awarded as damages in liberty interest action).

 In this case, Willbanks presented evidence that his reputation as a law enforcement officer had been damaged as a direct result of defendants' denial of due process, *i.e.,* their failure to provide him with a name-clearing hearing. The jury was instructed that plaintiff could not recover damages unless it was found that plaintiff had proved, by a preponderance of the evidence, that such damages had "proximately resulted from the failure of defendants to give plaintiff an opportunity to 'clear his name.'" Instructions of the court to the jury, paragraph fifty-four. Furthermore, the jury was admonished that "an award for plaintiff in this case, if any, should *not* simply serve as a means of awarding plaintiff the wages he lost when he was dismissed." *Id.,* paragraph fifty-seven (emphasis in original).[8] These instructions are in accord with the holdings in *Wheeler v. Mental Health and Mental Retardation Authority of Harris County, Texas,* 752 F.2d at 1072, and *Dennis v. S & S Consolidated Rural High School District,* 577 F.2d at 344. Thus, the jury's

---

**7.** The fourth requirement is more relevant when an allegedly inadequate name-clearing hearing is provided. In such cases, a dispute as to the procedural adequacy of the hearing is raised, and may be submitted to the jury. *See Campbell v. Pierce County, Georgia,* 741 F.2d 1342, 1345–46 (11th Cir.1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1754, 84 L.Ed.2d 818 (1985). Since no hearing was offered in the present case, the question of procedural adequacy was not raised.

**8.** Interrogatory number 13 of the jury verdict specified three types of compensatory damages that could be awarded: past mental anguish and suffering, future mental anguish and suffering, and damage to plaintiff's reputation for honesty and integrity. In accord with *Dennis,* 577 F.2d at 344, an interrogatory with respect to the allocation of lost wages (because of Willbanks' dismissal from the sheriff's department) was not submitted to the jury.

award of $23,000.00 in compensatory damages was permissible, and is consistent with the evidence presented.[9]

 Finally, the jury awarded a total of $2,000.00 in exemplary damages: $1,000.00 against Brunt, and $500.00 each against Geddie and Whitham. *See* appendix, jury answer to interrogatory number 14. "Punitive damages may be awarded against individual defendants in a Section 1983 case." *Wells v. Hico Independent School District*, 736 F.2d at 259 (citing *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)). However, such awards are limited to situations involving "reckless or callous disregard" for the plaintiff's rights. *See Wells v. Hico Independent School District*, 736 F.2d at 259 (citing *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)). The instructions to the jury in this case accorded with these holdings. *See* instructions of the court to the jury, paragraphs fifty-eight through sixty-three. Willbanks presented evidence that the defendants' actions in divulging false stigmatizing charges against him, and in denying him an opportunity to clear his name, were taken in reckless or callous disregard of his rights. Therefore, the award of exemplary damages was permissible. However, none may be assessed against defendant John Whitham, as the jury found that he had not publicly disclosed charges against Willbanks. Moreover, the award of punitive damages against defendant Brunt must be resubmitted at retrial of Brunt's supervisory liability. Accordingly, it is

ORDERED and DECREED that a new trial shall be, and it is hereby, granted, *sua sponte*, on the issue of defendant Frank Brunt's supervisory liability, as aforesaid.

## APPENDIX

### VERDICT OF THE JURY

When an interrogatory begins, "Has plaintiff proved....?", you are to assume that this means, "Has plaintiff proved, *by a preponderance of the evidence*, ...?"

Likewise, when an interrogatory begins, "Have defendants proved ...?", you are to assume that this means, "Have defendants proved, *by a preponderance of the evidence*, ...?"

### INTERROGATORY NO. 1

Did plaintiff prove that his discharge by defendant Frank Brunt was based on false charges?

Answer: "They were false" or "They were not false."

ANSWER: THEY WERE FALSE

If you have answered, "They were false," then answer the following interrogatory; otherwise, do not answer it or any of the remainder of the interrogatories submitted to you.

### INTERROGATORY NO. 2

Did plaintiff prove that such charges were such as to cast a stigma on his reputation as a law enforcement officer?

Answer: "The charges stigmatized" or "The charges did not stigmatize."

ANSWER: THE CHARGES STIGMATIZED

If you have answered the foregoing interrogatory, "The charges stigmatized," then answer the following interrogatory; otherwise, do not answer it or any of the remaining interrogatories submitted to you.

### INTERROGATORY NO. 3

Did plaintiff prove that defendant John Whitham officially or intentionally published the allegedly false charges against plaintiff?

In this connection, you are reminded that, as used in this interrogatory, to "publish" means to make known to other persons generally.

ANSWER: "He officially or intentionally published" or "He did not officially or intentionally publish."

ANSWER: HE DID NOT OFFICIALLY OR INTIONALLY PUBLISH

---

9. The jury found that none of the defendants were entitled to immunity from damages. *See* appendix, jury answers to interrogatories numbered 10, 11, and 12.

## INTERROGATORY NO. 4

Did plaintiff prove that defendant Dale Geddie officially or intentionally published the allegedly false charges against plaintiff?

ANSWER: "He officially or intentionally published" or "He did not officially or intentionally publish."

ANSWER: HE OFFICIALLY OR INTENTIONALLY PUBLISHED

If you have answered either Interrogatory No. 3 or Interrogatory No. 4, "He officially or intentionally published," then answer the following interrogatory; otherwise, do not answer it or any of the remaining interrogatories submitted to you.

## INTERROGATORY NO. 5

Did plaintiff prove that defendant Frank Brunt was aware that Deputies Whitham or Geddie, or both, published such allegedly false charges against plaintiff?

Answer: "He was aware of the publication" or "He was not aware of the publication."

ANSWER: HE WAS NOT AWARE OF THE PUBLICATION

If you have answered the foregoing interrogatory, "He was not aware of the publication," then answer the following interrogatory; otherwise, do not answer it.

## INTERROGATORY NO. 6

Did plaintiff prove that defendant Frank Brunt, in the proper exercise of his duties, reasonably should have been aware that Deputies Whitham or Geddie, or both, were intentionally and publicly publishing such allegedly false charges relating to plaintiff?

ANSWER: "He reasonably should have been aware" or "He reasonably should not have been aware."

ANSWER: HE REASONABLY SHOULD HAVE BEEN AWARE

If you have answered Interrogatory No. 5, "He was aware of the publication," or if you have answered Interrogatory No. 6, "He reasonable should have been aware,"

then answer the following interrogatory; otherwise, do not answer it.

## INTERROGATORY NO. 7

Did plaintiff prove that a reasonable person in the position of defendant Frank Brunt would have anticipated that the publication of such allegedly false statements regarding plaintiff, by his deputy (or deputies) would lead to a violation of the rights of the plaintiff?

ANSWER: "He would have anticipated" or "He would not have anticipated."

ANSWER: HE WOULD HAVE ANTICIPATED

If you have answered the preceding interrogatory, "He would have anticipated," then answer the following interrogatory; otherwise, do not answer it, and proceed to Interrogatory No. 9.

## INTERROGATORY NO. 8

Did plaintiff prove that defendant Frank Brunt failed properly to supervise or discipline such deputy (or deputies) to prevent the endangering of plaintiff's constitutional rights?

ANSWER: "He failed properly to supervise" or "He did not fail properly to supervise."

ANSWER: HE FAILED PROPERLY TO SUPERVISE

If you have answered Interrogatory No. 4 or Interrogatory No. 5, "He intentionally published," then answer the following interrogatory.

## INTERROGATORY NO. 9

Did plaintiff prove that publication of the allegedly false charges concerning plaintiff by any one or more of the defendants, when coupled with the failure to afford plaintiff a "name clearing" hearing, was the proximate cause of damages to the professional reputation of plaintiff?

ANSWER: "The publication was a proximate cause of damages" or "The publication was not a proximate cause of damages."

ANSWER: THE PUBLICATION WAS A PROXIMATE CAUSE OF DAMAGES

If you have answered the foregoing interrogatory, "The publication was a proximate cause of damages," then answer the following interrogatory; otherwise, do not answer it or any of the remaining interrogatories.

## INTERROGATORY NO. 10

Did defendant Frank Brunt prove that he is entitled to an immunity from damages, because, through extraordinary circumstances, he either did not know, or reasonably should not have known, what the Constitution and laws provided with respect to plaintiff's claim against him?

ANSWER: "Because of extraordinary circumstances, he did not know or reasonably should not have known" or "He knew or reasonably should have known."

ANSWER: <u>HE KNEW OR REASONABLY SHOULD HAVE KNOWN</u>

## INTERROGATORY NO. 11

Did defendant John Whitham prove that he is entitled to an immunity from damages, because, through extraordinary circumstances, he either did not know, or reasonably should not have known, what the Constitution and laws provided with respect to plaintiff's claim against him?

ANSWER: "Because of extraordinary circumstances, he did not know or reasonably should not have known" or "He knew or reasonably should have known."

ANSWER: <u>HE KNEW OR REASONABLY SHOULD HAVE KNOWN</u>

## INTERROGATORY NO. 12

Did defendant Dale Geddie prove that he is entitled to an immunity from damages, because, through extraordinary circumstances, he either did not know, or reasonably should not have known, what the Constitution and laws provided with respect to plaintiff's claim against him?

ANSWER: "Because of extraordinary circumstances, he did not know or reasonably should not have known" or "He knew or reasonably should have known."

ANSWER: <u>HE KNEW OR REASONABLE SHOULD HAVE KNOWN</u>

## INTERROGATORY NO. 13

What damages, and the amount thereof, if any, has plaintiff proved were suffered by him as a proximate result of defendants' failure to provide him with an opportunity to clear his name?

Answer in dollars and cents or by inserting a zero opposite each of the following items of alleged damages.

| | |
|---|---|
| Mental anguish and suffering (including embarrassment, humiliation, emotional distress, or shame) to date. | $2000.00 |
| Future mental anguish and suffering (including embarrassment, humiliation, emotional distress, or shame). | $1,000.00 |
| Damage to plaintiff's reputation for honesty and integrity. | $20000.00 |

If you have found damages in favor of the plaintiff in the answer to the foregoing interrogatory, then answer the following interrogatory; otherwise, do not answer it.

## INTERROGATORY NO. 14

Has plaintiff proved that he should be awarded exemplary damages against defendants?

If so, insert the amount of such exemplary damages in the blank below. Otherwise, insert a zero in such blank.

| | |
|---|---|
| Frank Brunt | $1,000.00 |
| John Whitham | $ 500.00 |
| Dale Geddie | $ 500.00 |

**FOREPERSON**

<u>Oct. 31, 1986</u>
**DATE**