**Jimmy DUBOSE, Plaintiff,**

v.

**Butch OUSTALET, et al., Defendants.**

**CONSOLIDATED WITH**

**Herman K. ATWOOD, Plaintiff,**

v.

**Butch OUSTALET, et al., Defendants.**

**Civ. A. No. J88–0364(L).**

United States District Court,
S.D. Mississippi,
Jackson Division.

March 15, 1990.

Jerry L. Mills and John T. Wakeland, Pyle, Dreher, Mills & Woods, Jackson, Miss., for plaintiffs.

C. Michael Ellingburg, Randolph Wood, for Al East, III.

Richard D. Mitchell, Asst. Atty. Gen., Jackson, Miss., for Lee Harrison.

R. Lloyd Arnold, Asst. Atty. Gen., Jackson, Miss., for State defendants.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

*Introduction*

Plaintiffs, Jimmy Dubose and Herman K. Atwood, brought these suits, now consol- idated, under 42 U.S.C. § 1983 against de- fendants, various members of the Missis- sippi Motor Vehicle Commission (MMVC or Commission) and Al East III, formerly commission chairman, for denying them a name-clearing hearing after discharging them from their jobs at the Commission.[1] Presently before the court are the motions of the commission defendants and defen- dant East for summary judgment. Plain- tiffs have responded to the motions, and the court has considered the memoranda with attachments submitted by the parties in ruling on the motions.

*Parties and Facts*

This action arises out of allegations of sexual harassment and the ensuing investi- gation of those allegations at the MMVC, an agency of the State of Mississippi. In the fall of 1987, during the course of an investigation by the attorney general's of- fice, six women former and present em- ployees of the Commission stated that they had been victims of sexual harassment by Herman K. Atwood, then commission di- rector. Subsequently two of the female employees reported to the attorney gener- al's office that plaintiff Dubose, then chief investigator at the Commission, had at- tempted to persuade them to retract their charges against Atwood. The culmination of the charges and investigation was a special meeting of the Commission on Feb- ruary 1, 1988, at which Atwood and Dubose were discharged from their employment. The discussion of the charges and the delib- erations surrounding the decision to dis- charge plaintiffs were conducted in an ex- ecutive session, closed to the public and the press. However, prior to the meeting, Tan- ya Renee Morgan, one of the commission employees who had accused Atwood and Dubose of wrongdoing, contacted local newspapers and television stations, inform- ing them of the meeting and of the nature of the charges against Dubose and At- wood. During the meeting, a local tele-

---

1. The amended complaint of Atwood also at- tempts to state some type of state law claim. The exact nature or basis of this claim is un- clear, and the court considers it to have been abandoned, as the only claim for which plain- tiffs argue in response to the present motion is the section 1983 claim for denial of a liberty interest hearing.

vision news crew arrived and waited outside the meeting room. Afterwards, the Commission made no official statement to the press regarding the reasons for the firings. Nevertheless, that evening, the next day, and at various times over the next few weeks, media reports linked Atwood's firing to charges of sexual harassment, and one television newscast erroneously implied that Dubose had also been accused of sexual harassment.

Two days after they were discharged, plaintiffs formally requested a clearing at which to clear their names.[2] The Commission officially denied this request at its regular monthly meeting approximately one month later. Plaintiffs brought the present section 1983 actions, seeking redress for denial of a liberty interest hearing to clear their names of defamatory and stigmatizing charges.

 Both Dubose and Atwood were at-will employees,[3] and thus had no property interest in their respective jobs. In their responses to the motions they do not contend otherwise. Rather, they argue that their liberty interests in obtaining other employment were implicated when the charges were made against them in connection with their terminations of employment, and that defendants violated their rights by failing to grant them a name-clearing or "liberty interest" hearing. It is well established that discharge from public employment under circumstances that put the employee's reputation at stake gives the employee a liberty interest in the opportunity to clear his name. *Rosenstein v. City of Dallas, Texas,* 876 F.2d 392, 395 (5th Cir. 1989) (citing *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976)); *Paul v. Davis,* 424 U.S. 693, 710, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976); *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971); *Wieman v. Updegraff,* 344 U.S. 183, 191, 73 S.Ct. 215, 219, 97 L.Ed. 216 (1952)). Specifically, a government employer is required to provide, upon request, a name-clearing hearing to a discharged employee if false and defamatory charges are made against the employee in connection with the discharge and if the employer makes or is likely to make the charges public in any official or intentional manner other than in connection with the defense of a related legal action. *See, e.g., Kelleher v. Flawn,* 761 F.2d 1079 (5th Cir.1985); *Wells v. Hico Indep. School Dist.,* 736 F.2d 243 (5th Cir.1984); *Ortwein v. Mackey,* 511 F.2d 696 (5th Cir.1975).

 Defendants take the position that they have never been under any obligation to provide a hearing to plaintiffs because the charges against plaintiffs, although made public, were never published *by defendants.* In response, plaintiffs contend that publication by defendants is not a necessary element of their claim, and that even if it were, the evidence with which

---

**2.** During the course of the February 1, 1988 meeting, Atwood requested an opportunity to clear his name. Defendants offered him the opportunity to make a statement at that time, but he declined. However, this offer is not material to the analysis, as he was given no notice nor any opportunity to cross-examine those employees who had made the charges or call his own witnesses.

**3.** The status of Atwood and Dubose as at-will employees is governed by *Miss.Code Ann.* § 25–9–127 (Supp.1989), which states as follows: No employee of any department, agency or institution who is included under this chapter or hereafter included under its authority, and who is subject to the rules and regulations prescribed by the state personnel system may be dismissed or otherwise adversely affected as to compensation or employment status except for inefficiency or other good cause, and after written notice and hearing within the department, agency or institution as shall be specified in the rules and regulations of the state personnel board complying with due process of law; ... however, ... this provision shall not apply ... (b) during the probationary period of state service of twelve (12) months; and (c) to an executive officer of any state agency who serves at the will and pleasure of the governor, board, commission, or other appointing authority. *Id.* Dubose had been an employee of the MMVC less than six months, and thus was a probationary employee within subsection (b) of the statute. Atwood was the executive director of the MMVC, serving at the pleasure of the MMVC. *See* Miss.Code Ann. § 63–17–67 (1989).

they have come forward raises a genuine issue of fact as to whether defendants were responsible for making the charges public. However, plaintiffs have cited no authority, and this court has found none, suggesting that a government employer may be held liable for failing to grant a liberty interest hearing absent a showing that the employer is directly responsible for the dissemination of or is likely to disseminate defamatory charges. A review of the Fifth Circuit cases dealing with the issue of publication confirms that publication by someone other than the government employer does not trigger the right to a name-clearing hearing. In *Wells v. Hico Indep. School Dist.*, 736 F.2d 243 (5th Cir. 1984), grievances had been brought against two public school teachers by other teachers and heard publicly at the regularly scheduled school board meeting. Three days later, the board voted not to renew the two teachers' contracts for the following school year. The district court entered judgment on jury verdict in favor of the plaintiffs, but the Fifth Circuit reversed in part. In so doing, the appellate court observed that because it could not be concluded as a matter of law that the statements made at the grievance hearing constituted charges *by* the defendants, i.e., the school board and administration, the judgment necessarily rested on the jury's findings in this regard. The court concluded that the judgment could not stand because of deficiencies in the jury instructions, one of which related to the matter of publication by the defendants:

> The jury was not instructed that any stigmatizing "charges" against these plaintiffs must have been made or approved by the defendants and made (or likely to be made) public by them.... *As to the necessity that the public disclosure be by the defendants, the jury is not instructed at all.*

*Id.* at 258 (emphasis added). In *Campos v. Guillot*, 743 F.2d 1123 (5th Cir.1984), the

court reversed for a similar error in the jury instructions. The record indicated that the only publication had been made by the plaintiff, and nowhere did the jury instructions state that the stigmatizing charges must have been made by the employer. In reversing, the court stated that the area of the law protecting a government employee's right to a name-clearing hearing envisions a set of circumstances "in which the discharged employee is publicly defamed in connection with his discharge by matter *deliberately released by his former employer* without an opportunity on his part to respond in public." *Id.* at 1126.[4]

The specific question of whether a liberty interest hearing is necessary when the charges are published by someone other than the employer was dealt with recently by the Seventh Circuit in *Hannon v. Turnage*, 892 F.2d 653 (7th Cir.1990). Although some nondefamatory information was released by the government, the only possibly defamatory information was published by another source. The court held that the plaintiff could not prevail because of a lack of evidence that the government participated in the dissemination of the defamatory information. *Id.* at 660. The court also observed that the government could not be held responsible for the dissemination of more detailed information than that which it released itself. *Id.*

The sole authority cited by plaintiffs for their position is *In re Selcraig*, 705 F.2d 789 (5th Cir.1983). Plaintiffs state that in that case the Fifth Circuit noted that publication of charges by an employee followed by media publication could trigger the right to a hearing. In *Selcraig* the court was faced with the question of whether a reporter who published stigmatizing charges could be held in contempt for not revealing the source of his information. The plaintiff in the related section 1983 suit for denial of a liberty interest hearing after discharge from government employment had alleged

---

4. *See also Kelleher v. Flawn*, 761 F.2d 1079, 1087–88 (5th Cir.1985) (no right to hearing where only publication was by plaintiff); *In re Selcraig*, 705 F.2d 789, 797 (5th Cir.1983) (while proof that government officials publicly con-

firmed in official interviews the charges against plaintiff would be sufficient evidence to meet publication requirement, proof that lower level government employees informed media of the charges would not be).

**192**

that unknown government officials secretly leaked defamatory and stigmatizing information to the press, after which two government officials confirmed the charges in official interviews with the press. The specific issue in *Selcraig* was whether the plaintiff in the related action had established a need to identify this secret source. As part of its evaluation, the court stated that because the officials publicly confirmed some of the information after the media was contacted by the secret source, it was not essential to plaintiff's claim that he show that the prior secret disclosure was also made; such a showing would be relevant only on the issue of punitive damages. It is clear that the court assumed that it would be necessary for the plaintiff to show publication *by the defendant. Selcraig* provides no support for plaintiffs' position.[5]

Because publication by defendants is an essential element of plaintiffs' claim, plaintiffs may not withstand defendants' motion for summary judgment unless they produce evidence which creates a genuine issue of fact as to whether defendants made public the allegations against them. Plaintiffs have not presented any direct evidence that defendants published the information; rather, they rely on (1) the undisputed fact that Tanya Renee Morgan contacted local newspapers and television stations prior to the February 1, 1988 MMVC meeting to inform them of the meeting and of the nature of the charges against Dubose and Atwood, and (2) the quantity of the information assimilated by the media, which plaintiffs argue suggests that the Commission was the source of the information. This reliance is misplaced. The affidavit of Tanya Renee Morgan clearly indicates that her contact with the media was for personal reasons and was in no way encouraged or condoned by defendants. In fact, she did not reveal the fact of this communication until over a year later, after the initiation of this suit. There is nothing about her contact with the media that could cause a reasonable jury to infer that it was brought about by any action or inaction of the Commission. Furthermore, her actions cannot be attributed, as a matter of law, to defendants, as there can be no vicarious or respondeat superior liability under section 1983. *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Barksdale v. King*, 699 F.2d 744, 746 (5th Cir.1983). Neither does what plaintiffs characterize as "the quantity of information assimilated" suggest that defendants made the charges known to the media, especially in light of the fact that the information which Morgan communicated was specific and, with one possible exception discussed *infra*, contained all the details subsequently revealed in the media coverage.

One particular newscast deserves a comment. As stated earlier in this opinion, one television news reporter made a statement on the air which implied that both

5. Although not relied on by plaintiffs, a footnote in a recent Fifth Circuit decision might, at first glance, appear to support the position of plaintiffs. In *Rosenstein v. City of Dallas*, 876 F.2d 392 (5th Cir.1989), the court stated with regard to publication that "[a]n employee may prove that the government agency is likely to make the charges public or that information about the charges is available to the public, although not publicized by the government.... There will be no liability, however, if the agency has carefully kept the charges confidential and the plaintiff caused them to be made public." However, the context of this statement indicates that the court was not addressing the sufficiency of publication by another source as opposed to publication by the government, but rather, was referring to those circumstances when the

charges, although unpublished, are nevertheless likely to be made public because the government employer makes no attempt to keep the contents of a personnel file confidential. *See, e.g., Burris v. Willis Indep. School Dist.*, 713 F.2d 1087, 1092 (5th Cir.1983) (hearing required on issue of confidentiality and prejudice to plaintiff if there is possibility that clearly false information will not be kept confidential); *Swilley v. Alexander*, 629 F.2d 1018, 1022 (5th Cir.1980) (district court erred in dismissing complaint where, although false information in file had not been published, there was no evidence that it would be kept confidential); *Ortwein v. Mackey*, 511 F.2d 696, 699 (5th Cir.1975) (no hearing required where charges not published and applicable regulations required contents of file to be kept confidential).

Dubose and Atwood were discharged for sexual harassment and which could be interpreted as a statement that one of defendants' attorneys provided to the press information regarding charges of sexual harassment and erroneously linked Dubose to those charges. Specifically, the newscaster stated as follows:

> The Board's attorney, Jim Kelly, said that two fired employees would not be given a liberty interest hearing to clear their names of sexual harassment charges. Board Chairman, Bush Atwood, and the Board's investigator, Jimmy Dubose, were fired last month reportedly for sexually harassing employees of the Commission.

Defendants have included with their motion the affidavit of Jim Kelly, in which he states that in talking with the reporter he did not mention sexual harassment. The reporter's statement, being an out of court assertion offered for the truth of what is asserted, i.e., that Mr. Kelly stated that both Dubose and Atwood were discharged for sexual harassment, is inadmissible hearsay. Because plaintiffs have offered no admissible evidence to dispute the statement of Jim Kelly contained in his affidavit, there exists no factual issue on this point.

Accordingly, because plaintiffs have failed to raise a genuine issue of fact as to a material element of their claim, defendants' motions for summary judgment will be granted.[6] A separate judgment shall be entered in accordance with Federal Rule of Civil Procedure 58.

SO ORDERED.

---

**6.** The issue of publication is dispositive of plaintiffs' claims, and thus the court need not address defendants' other arguments.