Billye **MYRICK**, Plaintiff-Appellant,

v.

**CITY OF DALLAS, et al.,**
**Defendants-Appellees.**

No. 85–1721.

United States Court of Appeals,
Fifth Circuit.

March 3, 1987.

Rehearing Denied March 30, 1987.

Debra G. Kress, Asst. City Atty., Dallas, Tex., for defendants-appellees.

Before BROWN, RANDALL, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

A discharged city employee claimed that the city's release of information about the conduct leading to her dismissal deprived her of a constitutionally protected liberty interest, that her dismissal deprived her of a constitutionally protected property interest, and that the city denied her due process before and after the deprivation of those interests. The district court granted summary judgment dismissing the employee's § 1983 claims. We affirm.

I

When Larry Boff called the Dallas Fire Department to get ambulance service for his dying stepmother, Nurse Billye Myrick answered the call and asked what the stepmother's problem was. "I don't know. If I knew I wouldn't need ..." Boff responded.

Nurse Myrick interrupted, "Sir, would you answer my questions please? What is the problem?"

"She's having difficulty breathing," Boff replied.

"How old is this person?" inquired Myrick.

"She is sixty years old."

"Where is she now?" continued Myrick.

"She is in the bedroom right now."

"May I speak with her, please?" Myrick requested.

"No, you can't," explained Boff. "She seems like she's incoherent."

"Why is she incoherent?"

"How the hell do I know?" Boff exclaimed.

"Sir, don't curse me," Myrick chided.

Donald W. Hill, Donald W. Hicks, Sr., Hill, Hicks, Collins & Joyner, Dallas, Tex., for plaintiff-appellant.

"Well, I don't care. These stupid questions you're asking me ... give me someone who knows what they are doing. Why don't you just send an ambulance out here?"

"Sir," responded Myrick, "we only come out on life-threatening emergencies."

"Well, this is a life-threatening emergency," Boff said.

"Hold on, sir," Myrick said. "I'll let you speak with an officer."

Nurse Myrick's supervisor in the fire department's call-screening program, Don Greene, then came on the line and admonished Boff to answer Nurse Myrick's questions.

"Well, all right," Boff said. "What are they before she dies. Will you please tell me what the hell you want?"

"I'll tell you what," said Greene. "If you cuss one more time, I'm going to hang up the phone."

When Nurse Myrick came back on the line, she insisted on talking to Boff's stepmother.

"You can't," Boff repeated. "She's incoherent."

"Let me talk to her, sir," Myrick insisted.

"She cannot talk at all," Boff said.

"Why?" Myrick asked.

"Now how am I supposed to know?"

"Well, then give her the phone," Myrick persisted.

Boff then told Myrick that he would attempt to get help from a hospital near his home and hung up. The call had begun at 10:54 p.m. on January 5, 1984, and had lasted about three minutes.

At 11:00 p.m., Boff's roommate, Dennis Fleming, telephoned the Dallas Fire Department. Nurse Myrick answered the phone and again insisted on speaking to Lillian Boff.

"She cannot talk," Fleming said. "She is just out of it. In fact, he's going in there now; he thinks she's dead."

At 11:01 p.m., seven minutes after the first call, the department sent an ambulance to Boff's home. It arrived at 11:07 p.m. Soon after the ambulance arrived, paramedics who staffed it pronounced Lillian Boff dead, a victim of heart disease.

Toward the end of January, Boff sued the City of Dallas, claiming that his call had been handled improperly and that his stepmother's death resulted from the delay in dispatching the ambulance. It was the first notice city officials had of the incident. On January 31, Nurse Myrick was given two days of administrative leave and sensitivity training.

The incident soon received considerable local, national, and even international publicity, including a series of front-page news stories about this and similar incidents involving the nurse call-screening program. The news media also published a transcript of the fire department's tape recording of the phone call. A television station in Australia telephoned the mayor of Dallas to say that the incident had generated more calls to its switchboard than any incident in recent memory. The city received hundreds of protests, including calls from residents of Alaska, Virginia, Alabama, Tennessee, California, Washington, and Massachusetts.

Nurse Myrick was placed on administrative leave a second time while the department investigated her handling of Boff's telephone call. Myrick provided the department with a written statement explaining what had occurred and responding to the allegations against her. Myrick also discussed the incident with the chief of the fire department. On March 16, 1984, the chief fired Myrick for violating various rules and regulations in handling Boff's call.

As provided in city administrative procedures, Myrick appealed her discharge to the assistant city manager, who upheld the chief's action. Myrick then exercised her right under a Dallas City Ordinance to appeal her discharge to an administrative board called a trial board. Three persons comprise the trial board: a member of the city council, a member of the city civil

service board, and an adjunct member of the civil service board appointed by a member of the city council.

Myrick challenged the composition of the trial board designated to hear her appeal. She asserted that the board members were biased and requested that the board as constituted not decide her case. She also asserted that the trial board members had a strong interest in the city and its image; that public officials were concerned about the impact of her case on the 1984 Republican National Convention to be held in Dallas; that the city itself was the investigator, prosecutor, and adjudicator of the charges against her; and that the city council member who served on the board was an elected official "very much subject to" public pressure. The board found the challenge without merit, conducted a hearing for three days, sustained all but one of the charges against Myrick, and sustained the discharge. A Dallas City Ordinance, presumably in accordance with state law, permits an appeal of the trial board's decision to state court for review. Dallas, Tex., Ordinance 17,802 (April 20, 1983) (amending Personnel Rules of the City of Dallas ch. VII, § 7.11). Myrick did not immediately seek review in state court.

On June 20, 1984, about one month before the trial board conducted hearings, Myrick filed suit in federal district court under 42 U.S.C. § 1983, seeking damages, a declaratory judgment that the composition of the trial board was unconstitutional, an injunction against the use of the trial board to decide her case, reinstatement with back pay pending a proper hearing, and attorney's fees and costs. Myrick named as defendants the City of Dallas and various members of its city council. On July 19, 1984, four days before the trial board's hearings, the district court denied Myrick's request for an injunction. On October 7, 1985, after discovery was completed and on the day the jury was to be selected, the district court granted summary judgment for the City of Dallas and the other defendants on all counts. Myrick appeals the summary judgment.

## II

Myrick argues that she was deprived of liberty without due process because the city publicized the Boff incident in a way that damaged her reputation.

Myrick was deprived of a liberty interest without due process only if her employment or employment opportunities were damaged in addition to her reputation *and* if she was subsequently denied due process to remedy that damage. *In re Selcraig,* 705 F.2d 789, 796 (5th Cir.1983). If Myrick's reputation was falsely damaged, her remedy must be found under state tort law. *See* Tex.Civ.Prac. & Rem. Code §§ 73.001–73.006 (Vernon 1986). If Myrick's reputation was damaged by the truth, even though procedures were deficient, the injury is not compensable under 42 U.S.C. § 1983. *Carey v. Piphus,* 435 U.S. 247, 263, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978). Rather, she could obtain only nominal damages for the procedural deprivation itself. *Id.* at 266, 98 S.Ct. at 1053. A hearing, however, is not a constitutional prerequisite to the city's publishing information about the charges against Myrick. *See In re Selcraig,* 705 F.2d at 796.

Thus, Myrick was not deprived of liberty without due process of law if, in a hearing about her dismissal, she had an adequate forum to preserve or regain her reputation as well as her job. Myrick's claim about her liberty interest, then, is inextricably intertwined with the adequacy of the hearings about her employment, to which we now turn.

## III

Myrick argues that she was deprived of her property interest in employment without due process of law both before and after she was fired.

## A

Myrick's argument that she was deprived of a property interest before she was fired is meritless. The only property interest in

this case is Myrick's interest in her employment. *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). By definition, Myrick was not deprived of her job until she was fired.

## B

Myrick contends that the city deprived her of due process by not providing her oral or written notice of the charges against her, an explanation of the employer's evidence, and an opportunity to present her side of the story prior to termination. *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). The city responds that this issue is not properly before us on appeal because it was never pleaded or otherwise raised before the district court.[1] Alternatively, the city argues that Myrick did not raise an issue of fact about the adequacy of her pretermination process.

■ We agree that Myrick did not state a claim of denial of pretermination notice and hearing and that, in any event, she did not establish a fact dispute sufficient to avoid summary judgment. Nothing in Myrick's complaint can be liberally construed to allege a violation of the standards required in *Loudermill*, for the complaint focuses on publicity and bias. Myrick's application for injunctive relief contains a statement that "due to the aforesaid publicity, ... [Myrick] was left with no mechanism with which to correct, [e]radicate, or substantially controvert the stories played by the media." In context, the statement concerns the trial board's alleged bias, not the lack of pretermination procedures.

In an affidavit accompanying her memorandum response to defendant's motion for summary judgment, Myrick said, "I have been deprived of my reputation in that I was adjudged guilty of mistreating an old woman and not being therapeutic prior to there even being an investigation completed and my side of the story considered." Although the fairest reading of this statement in context is that those who fired Myrick did so under media pressure despite the veneer of formal procedure, it might be an allegation that Myrick was denied proper pretermination process.

Under Fed.R.Civ.P. 15(a), the statement cannot be treated as a timely amendment to the pleadings, for it was made nearly a year after the amended complaint was filed. In addition, the city did not consent to the amendment and the trial court did not grant leave for the amendment. Nor can this be considered an issue tried by express or implicit consent of the parties under Fed.R.Civ.P. 15(b). The city did not present any evidence specifically addressing a pretermination deprivation of due process, although in its briefs on appeal it asserted that Myrick was provided with notice of the charges against her and opportunity to respond orally and in writing before she was fired. When the issue was raised on appeal, the city clearly stated that the question was not raised in the pleadings, joint-pre-trial order, or evidence below. Thus, the claim that Myrick was denied the procedures required by *Loudermill* is not properly raised.

■ Even if the issue were properly raised, summary judgment was appropriate. Myrick has the burden of establishing the violations of § 1983. *See, e.g., Tagupa v. Board of Directors*, 633 F.2d 1309, 1312 (9th Cir.1980). The statement from Myrick's affidavit is the only evidence she produced to show a pretermination deprivation of process. In the same affidavit, Myrick indicated that the fire department informed her of its investigation into allegations of misconduct regarding the Boff incident and also instructed her not to speak to the news media about the allegations. Myrick's counsel conceded that, at the fire department's request, Myrick provided the department with a written account of what she believed happened. Myrick's own statements thus indicate that the standards set forth in *Loudermill* were met. Myrick did not raise a fact dispute sufficient to avoid summary judgment.

1. In fact, this court raised the issue before oral argument.

## C

Myrick argues that post-firing procedure was inadequate to protect her property interest in employment because the city itself was the investigator, prosecutor, and adjudicator of the charges against her and because each member of the trial board was in fact biased.

It is well established that combining investigative and adjudicative functions in an administrative body is not forbidden by the imperatives of due process. As Justice White put it:

The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a ... difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators....

*Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975). In *Withrow,* the Court refused to presume bias from institutional structure, specifically when the investigative and adjudicative functions were in the same agency. In this case, those functions were not combined in the trial board. Rather, they were all housed in the City of Dallas. If bias is not to be inferred from the concentration of functions in one agency, then bias ought not be inferred because the functions are found in divisions of a larger governmental body such as the City of Dallas. We are persuaded Myrick must establish actual bias of the trial board members; that she cannot rest upon bias inferred from the composition of the board.

Myrick did not raise a genuine issue about the actual bias of any member of the trial board. Bias cannot be established by evidence that a person has previous and independent knowledge of a dispute, *see Blair v. Robstown Independent School District,* 556 F.2d 1331, 1335 (5th Cir.1977), nor that the person has taken a public position on a policy issue relating to the dispute, *see Hortonville Joint School District No. 1 v. Hortonville Education Association,* 426 U.S. 482, 493, 96 S.Ct. 2308, 2314, 49 L.Ed.2d 1 (1976). The newspaper articles on which Myrick relies, if admissible, at best imply that the members of the trial board had some independent knowledge of Myrick's actions, not that they were biased by that knowledge. In none of the articles is there specific mention of any of the members of the trial board; thus, the articles do not raise the issue of individual bias.

The depositions of the members of the trial board do not raise a fact question about bias. Glyn Beesley indicated that he had heard a recording of Boff's telephone call on the radio and had the impression that "there was something terribly wrong." Contrary to Myrick's assertion, this statement does not indicate any bias. Beesley explained in the deposition that, by "something wrong," he meant "[e]ither the system [the nurse screening program] or how it is implemented" and that he did not know which was at fault. Beesley also stated that he could fairly and impartially review Myrick's case because he had previously served on the trial board and had learned not to rely on the accuracy of news reports.

Dean Vanderbilt, the council member on the trial board, stated that he was not influenced by the media attention and that he was open-minded about the charges against Myrick. Providing the only evidence about the third member of the trial board, Vanderbilt stated that Daniel Garrigan made no statements indicating bias and in fact had discussed with Vanderbilt the need "to be sure the [Myrick's] conduct was handled and handled fairly." None of this raised an issue of individual bias, and summary judgment for defendants on the issue of bias was proper.

## D

Summary judgment for defendants on the adequacy of the post-termination procedure itself was also appropriate. Myrick appealed her discharge to the assistant city manager and then to the trial board. City ordinance provided her an op-

portunity, which she used, to challenge the individuals assigned to the board. The trial board's hearing included many of the trappings of judicial adjudication, including representation by counsel and examination of witnesses. Certainly the city's procedure was adequate.

Furthermore, Myrick cannot dispute the adequacy of post-deprivation remedies. Myrick could have appealed her decision to a state court for review under the substantial evidence standard, a remedy that adequately protects her property interest in employment. *See Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 3205, 82 L.Ed.2d 393 (1984); *Cohen v. City of Philadelphia,* 736 F.2d 81, 86 (3d Cir.), *cert. denied,* 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984) ("We thus join the First and Seventh Circuits in holding that substantive mistakes by administrative bodies in applying local ordinances do not create a federal claim so long as correction is available by the state's judiciary.") But Myrick instead sued in federal court. Of course, she was free to skip state remedies and proceed directly to federal court to vindicate state deprivation of her constitutional rights; exhaustion of remedies is not ordinarily required. But she cannot skip an available state remedy and then argue that the deprivation by the state was the inadequacy or lack of the skipped remedy.

### IV

The decision of the district court is AFFIRMED.