Howard M. ROSENSTEIN,
Plaintiff–Appellee,

v.

The CITY OF DALLAS, TEXAS,
Defendant–Appellant.

No. 87–1888.

United States Court of Appeals,
Fifth Circuit.

June 28, 1989.

Sam A. Lindsay, Chandra V. Fripp, Asst. County Attys., Dallas, Tex., for defendant-appellant.

Bruce A. Pauley, Lyon & Lyon, Rowlett, Tex., for plaintiff-appellee.

Before GOLDBERG, REAVLEY and JOLLY, Circuit Judges.

REAVLEY, Circuit Judge:

This appeal challenges a judgment against the City of Dallas for violation of the plaintiff's due process rights under federal civil rights law and against Donald Milliken and the city for slander under state law. We vacate the judgment, upholding the recovery on the civil rights claim, and remand for modification of damages.

In March 1984, Amy Bradley, a Dallas police officer, received several harassing and obscene telephone calls. Bradley named the plaintiff, Howard M. Rosenstein, a fellow police officer, as the person who made the calls. An Internal Affairs Department investigation concluded that Rosenstein had made the calls, and Rosenstein was terminated from his position as a Dallas police officer. Rosenstein had been employed by the City of Dallas for less than one year and was a probationary employee at the time of his termination. Shortly thereafter, police Captain Milliken made public the charges against Rosenstein in statements to the press concerning the discharge. Rosenstein sought to challenge the decision of the police department but was denied further consideration or hearing on the ground that no appeals procedure was available to one in his status as a probationary employee.

Rosenstein denied that he made the telephone calls and brought this action in the

Northern District of Texas seeking damages for violation of his constitutional rights pursuant to 42 U.S.C. § 1983 and for violations of state law. Rosenstein's § 1983 claim was based principally upon the city's denial of a name-clearing hearing to him. His state law claims for slander were based on the statements of Captain Milliken. After trial of the plaintiff's consolidated claims against the City of Dallas and Captain Milliken, the court entered judgment on the jury verdict in favor of Rosenstein.

The Denial of a "Name–Clearing" Hearing

■■■■ It is now beyond any doubt that discharge from public employment under circumstances that put the employee's reputation, honor or integrity at stake gives rise to a liberty interest under the Fourteenth Amendment to a procedural opportunity to clear one's name. *See Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); *Paul v. Davis*, 424 U.S. 693, 710, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515

(1971); *Wieman v. Updegraff,* 344 U.S. 183, 191, 73 S.Ct. 215, 218, 97 L.Ed. 216 (1952). We have held that public officials do not act improperly in publicly disclosing charges against discharged employees, but they must thereafter afford procedural due process to the person charged. *In re Selcraig,* 705 F.2d 789, 798 (5th Cir.1983). Moreover, the process due such an individual is merely a hearing providing a public forum or opportunity to clear one's name, not actual review of the decision to discharge the employee. *Roth,* 408 U.S. at 573 n. 12, 92 S.Ct. at 2707 n. 12. If a government employer discharges an individual under circumstances that will do special harm to the individual's reputation and fails to give that individual an opportunity to clear his name, however, the individual may recover monetary damages under § 1983 for the deprivation of his liberty under the Fourteenth Amendment. *Owen v. City of Independence,* 445 U.S. 622, 633 n. 13, 100 S.Ct. 1398, 1406 n. 13, 63 L.Ed.2d 673 (1980). To succeed on this § 1983 claim for the denial of a name-clearing hearing, the employee must prove the following: that he was discharged,[1] that defamatory charges [2] were made against him

---

1. Reputation alone is not a constitutionally protected interest. *Paul v. Davis,* 424 U.S. at 701, 96 S.Ct. at 1160–61; *White v. Thomas,* 660 F.2d 680, 684 (5th Cir.1981), *cert. denied,* 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148 (1982). Reputation must be impugned in connection with the termination of employment. *Paul v. Davis,* 424 U.S. at 710, 96 S.Ct. at 1165.

2. *See Codd v. Velger,* 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977). The Supreme Court has made clear that a liberty interest arises in this context if the charges put one's reputation at stake, impugn one's good name, honor, or integrity or impose a stigma that will foreclose freedom to take advantage of other employment opportunities. *See Roth,* 408 U.S. at 573, 92 S.Ct. at 2707. Settling on a term that adequately characterizes the type of charges which give rise to a liberty interest under *Roth* has been a source of much difficulty for this court; our choice of the term "defamatory" is deliberate. In the past we have usually employed the term "stigmatizing." *See Campos v. Guillot,* 743 F.2d 1123, 1126 (5th Cir.1984). Stigma, however, has not proven to be a concept capable of much precision. At times we have attempted to supplement "stigmatizing" with the notion of "a badge of infamy." *See Evans v. City of Dallas,* 861 F.2d 846, 851 (5th Cir.1988);

*Ball v. Board of Trustees of Kerrville Independent School Dist.,* 584 F.2d 684, 685 (5th Cir. 1978), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1535, 59 L.Ed.2d 788 (1979). At other times we have suggested that "stigmatizing" requires the plaintiff to prove that "her employment or employment opportunities were damaged in addition to her reputation," *Myrick v. City of Dallas,* 810 F.2d 1382, 1385 (5th Cir.1987), or that "the claimant must show that damage to his reputation and employment opportunities has in fact occurred." *Evans,* 861 F.2d at 851. Our efforts to define "stigmatizing" have only led us further from the meaning of *Roth.*

The dissent accuses us of attempting "to obliterate the term 'stigmatize' from the printed books." We have not been so bold. We do believe that the term "stigmatize" has proven unnecessarily confusing, but by characterizing the type of charge that triggers a liberty interest as "defamatory," we in no way change the law. The meaning of "defamatory" is well settled and familiar; it better addresses the range of meanings intended by the Supreme Court; and it provides better direction for trial courts. Furthermore, our use of the term "defamatory" in this manner is hardly unprecedented. *See Owen v. City of Independence,* 445 U.S. at 633 n. 13, 100 S.Ct. at 1406 n. 13; *Paul v. Davis,* 424

in connection with the discharge,[3] that the charges were false,[4] that no meaningful public hearing was conducted pre-discharge,[5] that the charges were made public,[6] that he requested a hearing in which to clear his name,[7] and that the request was denied.[8]

■ The city argues that the plaintiff did not request a hearing. It is undisputed, however, that Rosenstein requested access to the police department's established appeal procedure to contest the charges. On May 10, 1985, Rosenstein wrote to the Dallas City Manager that "I was fired from the Dallas Police Department for something that I did not do," and he "request[ed] an appeal from this decision." In this case where the only issue was Rosenstein's guilt or innocence of the particular charge that stigmatized him, his request to participate in established grievance, appeals, or other review procedures to contest defamatory charges was sufficient to state a request for a name-clearing hearing. A discharged employee need not use the term "name-clearing hearing." *Cf. Owen*, 445 U.S. at 626–29, 100 S.Ct. at 1403–04 (noting that fired police chief demanded only an appeal and was refused on the grounds that the city charter provided for no appellate procedure).

■ The governmental employer need not grant the discharged employee access to its established appeals procedures, but may provide an alternative procedure, or even an ad hoc hearing, solely for the purpose of allowing the employee to clear his name. An employer electing to implement a special procedure, however, must notify the discharged employee that it will give him access to the special name-clearing procedure if he chooses to take advantage of it; the state must "make known to the stigmatized employee that he may have an opportunity to clear his name upon request." *In re Selcraig*, 705 F.2d 789, 796 (5th Cir.1983). An employer's denial of an employee's request to appeal the employer's discharge decision, which rested on guilt of the stigmatizing charge, is a denial of a name-clearing hearing unless the employer specifically notifies the employee of the availability of an alternative procedure, which will provide the employee with a public forum to clear his name before the governing body that discharged him.

U.S. at 709, 96 S.Ct. at 1164; *Lyons v. Barrett*, 851 F.2d 406, 410 (D.C.Cir.1988); *Fleisher v. City of Signal Hill*, 829 F.2d 1491, 1495 (9th Cir. 1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988); *White v. Thomas*, 660 F.2d at 684; *Dennis v. S & S Consolidated Rural High School District*, 577 F.2d 338, 341 (5th Cir.1978). The Seventh Circuit has held that if a claim does not succeed in alleging "actionable defamation," "*a fortiori* it does not allege a violation of the Constitution." *Clark v. Maurer*, 824 F.2d 565, 566 (7th Cir.1987).

3. The charges must be connected with the discharge but need not actually cause the discharge. *Owen*, 445 U.S. at 633 n. 13, 100 S.Ct. at 1406 n. 13; *Wells v. Hico Independent School Dist.*, 736 F.2d 243, 256 n. 17 (5th Cir.1984), *cert. denied*, 473 U.S. 901, 106 S.Ct. 11, 87 L.Ed.2d 672 (1985). We emphasize, however, that the charges must be more than merely adverse; the charges must be the type that might seriously damage the employee's standing and associations in the community, that blacken his good name or impair his employment opportunities. *See Wells*, 736 F.2d at 256 n. 16. Moreover, mere discharge, without specific defamatory charges, will not implicate a liberty interest even though it might make the employee less attractive to other employers. *Roth*, 408 U.S. at

574 n. 13, 92 S.Ct. at 2707 n. 13; *Wells*, 736 F.2d at 256.

4. *Codd*, 429 U.S. at 628, 97 S.Ct. at 884.

5. *Campos*, 743 F.2d at 1126.

6. *Bishop v. Wood*, 426 U.S. at 348–50, 96 S.Ct. at 2079–80; *Campos*, 743 F.2d at 1126. An employee may prove that the government agency is likely to make the charges public or that information about the charges is available to the public, although not publicized by the government. *See Wells*, 736 F.2d at 256. There will be no liability, however, if the agency has carefully kept the charges confidential and the plaintiff caused them to be made public. *Campos*, 743 F.2d at 1126.

7. *Campos*, 743 F.2d at 1126.

8. A name-clearing hearing is not a prerequisite to publication, and the state is not required to tender one prior to disclosing the charges or discharging the employee. *In re Selcraig*, 705 F.2d at 796. The state deprives an employee of a liberty interest only when it denies his request for an opportunity to contest the charges and clear his name.

■ Not only did the City of Dallas fail to notify Rosenstein that he might take advantage of some alternative or ad hoc hearing procedure, city officers made it perfectly clear that he would not be allowed any procedural avenue whatsoever to clear his name. In the letter formally discharging Officer Rosenstein and informing him of the charges, Police Chief Billy Prince stated: "Because you are a probationary employee of the Dallas Police Department, my decision in this matter is final." The City's response to Rosenstein's letter to the City Manager requesting an appeal concluded the matter by stating: "[I]n accordance with the Police Code of Conduct the decision of the Chief of Police is final. You were a probationary employee and therefore ineligible for further appeal rights." We need not reach the question of whether the jury instructions adequately stated all the elements of a claim for the denial of a name-clearing hearing because as a matter of law the record establishes Rosenstein's claim.

Municipal Liability

■ The City of Dallas complains of the district court's refusal to instruct the jury to the effect that the city's liability for the civil rights violation depended upon Rosenstein proving that the city council had delegated policy-making authority to the officer who denied him a name-clearing hearing. That instruction was unnecessary in the state of this record. The Chief of Police testified that he set all of the policies for the police department, and the city attorney neither questioned the Chief upon that statement nor raised an issue to the contrary. The city is liable for the action of the official responsible for establishing policy with respect to the matter. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 1300–01, 89 L.Ed.2d 452 (1986). The hearing was denied although both the Chief of Police and the City Manager were aware of Rosenstein's desire for a hearing. There was no need to prove a city policy, although it was significant in this respect that the Assistant City Manager who had supervisory responsibility for the police department testified that he did

not know what was meant by "name-clearing hearing."

The Slander Cause of Action

■ Rosenstein also sued under state slander law for damages caused by the publication of the defamatory charges. Under Texas law municipalities are granted broad immunity from liability when performing governmental functions. *Gates v. City of Dallas*, 704 S.W.2d 737, 738–39 (Tex.1986). A Texas court of appeals has recently held that defamation of a police officer by city officials in the course of discharging that police officer is protected under the city's governmental immunity and, as an exercise of a governmental function, is not actionable against either the city or the officials under state slander law. *City of Dallas v. Moreau*, 718 S.W.2d 776, 779–80 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). This decision controls Rosenstein's state law claims, which must be dismissed.

Damages

■ The district court awarded damages to the plaintiff for lost earnings, mental anguish and suffering, harm to the plaintiff's reputation and career, and punitive damages against Captain Milliken. The Supreme Court has held that when only a liberty interest is infringed, the plaintiff is entitled to only nominal damages or to any actual damages, such as emotional distress, that can be proved to result from the infringement of the liberty interest. *Carey v. Piphus*, 435 U.S. 247, 260–63, 98 S.Ct. 1042, 1050–52, 55 L.Ed.2d 252 (1978). Rosenstein did not have a property interest in his job and may not recover damages for the loss of that job. The district court, therefore, should have disregarded as immaterial the jury's finding of $4087.10 in damages for lost earnings.

■ An employee may not recover directly under § 1983 for slanderous statements made by his employer, but he is entitled under federal law to a hearing to clear his name if the statements were made in connection with termination of his employment. We can find no appellate court opinion that directly addresses the question

of whether damages to reputation are recoverable when a name-clearing hearing is denied.[9] At least two cases in this court have apparently assumed, without deciding, that damages for harm to reputation are recoverable in this type of action. *See In re Selcraig,* 705 F.2d at 798; *White v. Thomas,* 660 F.2d at 682. We hold that in a § 1983 action for denial of a name-clearing hearing, the plaintiff's damages for loss of the opportunity to clear his name of the false and defamatory charges include any harm to his reputation and career caused by the charges made against him that he is able to prove.[10] The award of punitive damages, however, falls with the dismissal of the state law slander claim.[11]

## Other Matters

■ Appellants urge that the § 1983 claim and the state law slander claim are separate and independent claims and that the district court erred by awarding attorneys' fees for time spent on the now unsuccessful slander claim. *See Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). Both claims share a common core of facts, and the damages theories for both claims are identical. We are not prepared to state that the district court's award of attorneys' fees was an abuse of discretion. *See Graves v. Barnes,* 700 F.2d 220, 221 (5th Cir.1983). Because the district court denied the defendants' motion for judgment n.o.v. and thus did not consider that the plaintiff had urged an unsuccessful claim, we cannot know whether the district court considered the appellants' arguments in awarding attorneys' fees. We therefore direct the district court on remand to reconsider its

9. The rule of *Paul v. Davis,* 424 U.S. at 701, 96 S.Ct. at 1161, that reputation alone is not a constitutionally protected interest is not in point. The question presented in *Paul v. Davis* was what circumstances give rise to a right to a name-clearing hearing, not what are the damages for the denial of such a hearing. The Supreme Court did not overrule the holding in *Roth* that charges which blacken one's name, but do not necessarily cause the loss of employment opportunities, can constitute part of a claim for a name-clearing hearing, rather the Court reaffirmed the holding in *Roth* that such charges give rise to a liberty interest only when made in the course of termination from public employment:

> While *Roth* recognized that governmental action defaming an individual in the course of declining to rehire him could entitle the person to notice and an opportunity to be heard as to the defamation, its language is quite inconsistent with any notion that a defamation perpetrated by a government official but unconnected to any refusal to rehire would be actionable under the Fourteenth Amendment....

*Paul v. Davis,* 424 U.S. at 709, 96 S.Ct. at 1164. The Supreme Court specifically held that it was not sufficient to establish a claim under § 1983 "that there simply be defamation by a state official; the defamation had to occur in the course of the termination of employment." *Id.* at 710, 96 S.Ct. at 1165. The dissent's misreading of *Paul v. Davis* as holding that a plaintiff may only recover when the false and defamatory charges actually cause the employee to lose a subsequent job results from confusing the circumstances necessary to trigger a liberty interest with the damages caused by the violation of the liberty interest.

10. The dissent notes that "in the years since the writing of *Roth,* the law has been refined to the point that, in a discharge case, the due process clause recognizes only the employee's liberty right not to have the government bar future employment opportunities...." By "refined," of course, the dissent means that an important part of the *Roth* holding has been overturned. There is simply no authority to support that conclusion. In every case in which the Supreme Court has considered the issue the right of a discharged employee to clear his name of charges that blacken his reputation, in addition to charges that foreclose future employment opportunities, has been recognized. The language in the opinions of this court which might be read otherwise is dicta and did not even address the question of damages. The question presented by this case is a simple one; what are the damages when one is denied his Fourteenth Amendment right to *clear his name* of charges that *blacken his reputation?* We believe that the answer given here is the only possible one.

11. Although the jury could have found the damages for harm to reputation under both the slander cause of action and the § 1983 action, our holding that the slander claim is barred by governmental immunity does not affect those damages. Although the jury was instructed that statements charging criminal activity were "slanderous *per se,*" the jury was not instructed to presume damages for harm to reputation. Moreover, the record amply supports Rosenstein's claim that his reputation and standing in the community were harmed and that his career suffered.

award of attorneys' fees in light of our holding that a judgment n.o.v. should have been entered on the slander claim.

■ The appellants also argue that the district court erred in denying their motion for new trial on the grounds that the court erroneously admitted irrelevant evidence concerning Officer Rosenstein's commendations, that the district court submitted an improper instruction to the jury regarding custom and policy, that the district court refused to submit a separate issue on whether Rosenstein requested a name-clearing hearing, and that the district court's errors confused the jury and prejudiced the defendants. Evidence of Officer Rosenstein's previous commendations was relevant as background and as evidence of his professional reputation, which was harmed by the stigma of the false charges. The appellants' other grounds are answered above.

The judgment is VACATED and the case is REMANDED to the district court for modification of damages against the City of Dallas consistent with this opinion and for the award of attorneys' fees.

E. GRADY JOLLY, Circuit Judge, dissenting in part:

I respectfully dissent because I object to footnote 2 and because the majority allows recovery for damage to general reputation. I otherwise concur.

## A.

I object to footnote 2 on two grounds; one is pragmatic, the other substantive. My first objection is that note 2 is dicta, and serves no purpose in resolving the case before us. Second, by its "deliberate" decision to obliterate the word "stigmatize" from the printed books and substitute the annointed term "defamatory" in its stead, I believe the majority has wrongly assumed the authority to rewrite earlier opinions of this court and the Supreme Court.

Judge Reavley is correct in his reading of *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), to allow a discharged employee two avenues for complaining that his liberty interest has been implicated as a result of his discharge by a government employer: first, if the charge made against the employee "might seriously damage his standing and associations in his community," for example, a charge "that he has been guilty of dishonesty, or immorality," *id.* at 92 S.Ct. 2707; and second, if the state "imposes on him a stigma or other disability that forecloses his freedom to take advantage" of other comparable employment in his chosen profession.

However, I am convinced that in the years since the writing of *Roth*, the law has been refined to the point that, in a discharge case, the due process clause recognizes only the employee's liberty right not to have the government bar future employment opportunities by publicly assigning false reasons for discharge that stigmatize the employee in obtaining employment in his line of work. The reasons offered to support the employee's discharge must defame his professional competence in such a way as to characterize him as fundamentally unfit for that line of work.

In *Paul v. Davis*, 424 U.S. 693, 696, 96 S.Ct. 1155, 1158, 47 L.Ed.2d 405 (1976), the Supreme Court itself said that

[w]hile we have in a number of our prior cases pointed out the frequently drastic effect of the "stigma" which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either "liberty" or "property" by itself sufficient to invoke the procedural protection of the Due Process Clause.

*Id.* 96 S.Ct. at 1160–61.

*Paul* makes clear that reputation alone is not a protected liberty interest. In a discharge-from-employment case, an employee's liberty interest is infringed only when the government's defamatory charges stigmatize the employee in connection with his future employment opportunities. *Id.*, 96 S.Ct. at 1164–65.

In the years following the *Paul* opinion, the Court has made it even clearer that charges that are only defamatory do not of themselves implicate liberty interests; the charges must be stigmatizing. In *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed. 2d 92 (1977), the Supreme Court repeatedly used the word "stigma" or a variant of that term to explain the plaintiff's burden in a liberty-interest case. Although the court at one point characterized the impression the employer must make as "false and defamatory," "defamatory" as used in context requires that those defamatory charges be stigmatizing. *Id.*, 97 S.Ct. at 884. In *Board of Curators of University of Missouri v. Horowitz*, 435 U.S. 78, 83, 98 S.Ct. 948, 951, 55 L.Ed.2d 124 (1978), the Court continued to recognize the right to a good reputation as protected only against charges that so stigmatized the plaintiff that her opportunities to a career in her chosen profession were substantially impaired. Furthermore, the Court characterized its holding in *Bishop v. Wood*, 426 U.S. 341, 349, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976), where a policeman was discharged for alleged defamatory reasons, as not amounting to "a stigma infringing one's liberty." *Id.* 98 S.Ct. at 952.

In turning to our cases, I am thoroughly persuaded that, on the whole, we have faithfully followed the Supreme Court concept that a plaintiff must show that he has been stigmatized. In *Ball v. Board of Trustees of Kerrville Independent School District*, we stated that for a charge to be stigmatizing it must be worse than merely adverse; it must be such as would give rise to a "badge of infamy," public scorn, or the like. 584 F.2d 684, 685 (5th Cir.1978) *cert. denied*, 440 U.S. 972, 99 S.Ct. 1535, 59 L.Ed.2d 788 (1979). "To establish ... a due process deficit, [the plaintiff] must establish that in the course of terminating his employment, the agency prepared a report, without giving him notice and an opportunity to be heard, which was (a) false, (b) stigmatizing and (c) published." *Huffstutler v. Bergland*, 607 F.2d 1090, 1092 (5th Cir.1979) (footnote omitted). "A constitutionally protected liberty interest is implicated only if an employee is discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities. *White v. Thomas*, 660 F.2d 680, 684 (5th Cir.1981) (citing *Codd v. Velger*). "A party does not have a liberty interest in his reputation protected by the fourteenth amendment unless he can establish that the governmental employer's charges against him rise to such a level that they create a badge of infamy which destroys the claimant's ability to take advantage of other employment opportunities." *Evans v. City of Dallas*, 861 F.2d 846, 851 (5th Cir.1988).

I do not contest the majority's observation that the precedents are sometimes inconsistent and somewhat confusing. On at least two occasions our court appears to revive the *Roth* dichotomy of reputation and stigma by stating that "[t]o establish a liberty interest, an employee must demonstrate that his government employer has brought false charges against him that 'might seriously damage his standing and associations in his community,' *or* that impose a stigma or other disability 'that forecloses freedom to take advantage of other employment opportunities.'" *Wells v. Hico*, 736 F.2d 243, 256 (5th Cir.1984) (*quoting Roth*) (emphasis added). See also *Campos v. Guillot*, 743 F.2d 1123, 1125 (5th Cir.1984) (quoting same language from *Roth*). In both *Wells* and *Campos* the court was quoting from *Roth* without adverting to the later fusing of reputation with stigma in *Bishop* and *Paul*. However, both the *Wells* and *Campos* panels implicitly acknowledged the merger when each went on to restate the proposition of *Paul* that reputation alone is not a constitutionally protected interest, even though state law may create an action for defamation. *Wells*, 736 F.2d at 256; *Campos*, 743 F.2d at 1125. Thus, the conclusion I reach is that our precedents, when read as a whole, plainly require a plaintiff to prove more than that the governmental employer's charges were defamatory; he must prove that they were *stigmatizing*, and, specifically, that they were so damaging as to foreclose employment opportunities.

The majority, on the other hand, by choosing the word "defamatory," in footnote 2, takes several steps back through the cases to *Roth* and suggests that harm to general reputation infringes a protected liberty interest. Because I believe that the state of the law today makes a perfectly clear distinction between "defamatory" and "stigmatizing," and that a liberty interest of an employee is infringed only when the government makes charges that place a stigma upon him that forecloses other employment opportunities, I would choose "stigmatizing," not "defamatory," to describe the nature of the charge that implicates a liberty interest. I therefore respectfully dissent from the inclusion of footnote 2 in this opinion.

### B.

I further part company with my distinguished brothers in their holding that Rosenstein may recover damages for general loss of reputation. In my view, such a holding—for which the majority acknowledges there is no case authority—is clearly contrary to *Paul v. Davis,* 424 U.S. 693, 696, 96 S.Ct. 1155, 1158, 47 L.Ed.2d 405 (1976), and *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

The majority acknowledges in footnote 1, as it must, that reputation alone is not a constitutionally protected interest; only damage to reputation that results in a loss of a more substantial interest, such as the loss of employment opportunity that is involved here, is actionable under the Constitution. *Paul,* 96 S.Ct. at 1161. I should think, therefore, that the majority would acknowledge the fundamental principle that constitutional damages must flow from the constitutional right infringed. Since *Paul* makes clear that the City of Dallas did not infringe any constitutional right of Rosenstein when it damaged his general reputation apart from his substantial interest in employment, it is difficult to see how he can collect damages from the city for no legally recognizable wrong that was committed against him.

Even if, however, this logic is unpersuasive to the majority, it should be persuaded by the United States Supreme Court's holding in *Carey v. Piphus:*

> In order to further the purpose of section 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question—just as the common-law rules of damages themselves were defined by the interests protected in the various branches of tort law.

*Id.,* 98 S.Ct. at 1050. The rule is simple. We must fit the remedy to the right protected. The right protected is not reputation, but the liberty to seek employment opportunities without improper government interference. Thus, if we are faithful to *Carey,* we can only allow compensation that results from damages suffered from the impairment of that right.

Of course, under this rule, the plaintiff effectively recovers for harm to reputation, but he recovers only for a particular and special harm done to his reputation, that is, the harm that causes loss of job opportunities. Such a result flows directly from *Paul* and *Carey: Paul* specifically holds that one's constitutional liberty rights are violated only when the government harms one's reputation in connection with the loss of a more substantial interest, here, the right to earn a living; *Carey* specifically holds that under section 1983 compensation should be tailored to redress losses for violation of the particularized constitutional right. Because I believe that the majority cuts a back door in the case law to collect damages when the front door was closed by *Paul,* and because I believe that the majority closes its doors on the rule established in *Carey,* I respectfully dissent from the majority's allowing recovery for damage to general reputation.

### C.

In conclusion, because the majority opinion, both in footnote 2 and in its creating recovery for all damage done to reputation, erodes distinctions, drawn by Supreme Court authority and by our authority, between common law defamation and deprivation of liberty under the Constitution to

earn a living in one's chosen line of work, I dissent.