NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0243n.06

Case No. 19-3580

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 01, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TATAYANA MOORE; DANIEL PERSTIN; NICOLE RUSSELL; THOMAS McGERVEY; JONATHON BELLOMY; ERICA JOHNSON; HARRY SYKES, | ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | OPINION |
| CITY OF CLEVELAND; MICHAEL McGRATH; MATTHEW GALLAGHER; GEORGE KWAN, | ) ) ) | |
| Defendants-Appellees. | ) ) | |

BEFORE: GILMAN, DONALD, and LARSEN, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge.** In 2018, the City of Cleveland fired 15 recruits who had enrolled in the Cleveland Police Academy after concluding that those recruits had plagiarized certain assignments that were part of the Academy's curriculum. A group of those recruits, maintaining that they had been wrongly accused of plagiarism, filed a lawsuit against the City as well as several of its individual employees. The district court rejected all of the recruits' claims and granted summary judgment in favor of the defendants. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

The seven appellants in this case enrolled in the Cleveland Police Academy beginning in February 2018. Individuals must complete the Academy's training program and then pass a final exam in order to become police officers in Cleveland. While in the Academy, recruits are considered City employees.

As part of the Academy's curriculum, recruits were required to complete "notebook" assignments that they would periodically submit for grading. One component of the notebook entries that recruits had to complete is known as "Student Performance Objectives." A Student Performance Objective is a short statement of policing standards. Recruits were expected to type the exact language of the assigned Student Performance Objective into their notebooks verbatim. They were not, however, allowed to simply copy and paste the entries because typing them out was part of the memorization process.

At some point in 2018, several of the Academy's instructors began to suspect that some of the recruits were copying each other's notebook entries. The suspicion arose when the instructors noticed that several recruits' notebooks contained identical typos and grammatical errors. Sergeant Shawn Smith, the recruiting class Officer in Charge, was assisted by George Kwan, an instructor at the Academy, in investigating the potential cheating. The instructors collected all of the recruits' notebooks and reviewed them. After doing so, they concluded that 15 recruits, including the present appellants, had impermissibly copied each other's work.

Smith then decided that these recruits should not be allowed to sit for the final exam, which was scheduled for August 16, 2018. The recruits were informed of this decision on or around August 6. Because passing the exam was a requirement for becoming a police officer, this decision effectively resulted in their termination.

After being told that they would not be permitted to take the final exam, 11 of the 15 recruits filed this lawsuit on August 13, 2018. (Four of them later dismissed their claims voluntarily, leaving the seven who currently remain in the suit.) Along with their complaint, the recruits moved for a temporary restraining order (TRO) that would require the City to allow them to sit for the final exam on August 16. The district court conducted a hearing on August 15, after which it denied the recruits' motion for a TRO.

Between August 17 and August 23, 2018, the City conducted a number of predisciplinary hearings for the 15 recruits in question. They were charged with three rule violations: (1) plagiarizing their notebook entries, (2) failing the Academy's notebook requirement, and (3) failing to come forward to admit to the plagiarism. After the hearings, all of the recruits were found guilty on each of the three charges, with the exception of one recruit who was found not guilty on the first charge and another who was found not guilty on the third. They were all subsequently fired. Shortly thereafter, on September 17, the City announced that the recruits had been terminated for cheating, and it publicly identified them in the process.

The recruits brought a range of claims under the U.S. Constitution, the Ohio Constitution, and Ohio state law. Their lawsuit was directed against the City of Cleveland, as well as Kwan, Smith, Matthew Gallagher (another Cleveland police officer), and Michael McGrath (the City's Safety Director). Smith has since between dismissed from this suit and, for the sake of convenience, this opinion will refer to all of the remaining appellees collectively as "the City."

The City moved for summary judgment. After rejecting all of the recruits' claims, the district court granted the City's motion. This timely appeal followed.

## II. ANALYSIS

### A.    Standard of review

We review the district court's grant of summary judgment de novo.  *Keith v. County of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B.    Deprivation of liberty without due process

The only issue that the recruits have raised on appeal is the district court's grant of summary judgment on their federal liberty-interest due process claim.  The Fourteenth Amendment's Due Process Clause requires that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  A person's "reputation, good name, honor, and integrity are among the liberty interests protected" by this provision.  *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 (1972)).  In general, "before a person is deprived of either a liberty or property interest, he has a right to some kind of hearing."  *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002) (citing *Roth*, 408 U.S. at 570 n.7).

When plaintiffs allege, as the recruits have here, that a state action has injured their reputation, this type of claim is frequently called a "stigma-plus" claim.  *See Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 501 (6th Cir. 2007).  The name derives from the fact that, to prevail on such a claim, a plaintiff must show "that the state's action both damaged his or her reputation

(the stigma) and that it 'deprived [him or her] of a right previously held under state law' (the plus)."

*Id.* at 502 (alteration in original) (quoting *Paul v. Davis*, 424 U.S. 693, 708 (1976)).

This circuit has previously enumerated five prerequisites that must be satisfied in order for a plaintiff to establish that he or she was deprived of a liberty interest and thus entitled to a name-clearing hearing. They are as follows:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment. Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance. Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.

*Quinn*, 293 F.3d at 320 (ellipses and internal quotation marks omitted) (quoting *Brown v. City of Niota*, 214 F.3d 718, 722–23 (6th Cir. 2000)).

In addition, before bringing suit, a plaintiff must request a name-clearing hearing and be denied that request. *See id.* at 321–24 ("[A] plaintiff who fails to allege that he has requested a hearing and was denied the same has no cause of action . . . ."). A plaintiff may not necessarily have to use the precise phrase "name-clearing hearing," but his request must "'sufficiently apprise' Defendants of his desire for a hearing to clear his name 'following the dissemination of the statements.'" *Id.* at 325 (quoting *Ludwig v. Bd. of Trustees of Ferris State Univ.*, 123 F.3d 404, 411 (6th Cir. 1997)).

The district court assumed, as it was required to do at the summary-judgment stage, that the plagiarism charges were false. It accordingly determined that the recruits had satisfied the five prerequisites listed above because the City had named the recruits in a news report accusing them of dishonesty, and the City had voluntarily publicized their names in the process of terminating their employment.

The district court, however, went on to conclude that the recruits had not sufficiently apprised the City of their desire for a name-clearing hearing. With regard to this issue, the recruits primarily rely on a letter that their attorney sent to a representative of the City on August 12, 2018. The relevant portion of that letter reads:

> The remedy that we seek at this point in time is eminently reasonable: allow these recruits to take the exam on August 16, 2018. In the meantime, the City can be free to continue its investigation in what we expect will be a fair and thorough manner. Our clients will be forthright and cooperative to help you clear their names. Allow them the same due process of law you teach at the academy.

The district court noted that although the letter used the phrase "clear their names," the sentence containing those words promised to cooperate in an *investigation* rather than making any request for a hearing. It further observed that "the reference to name-clearing appears in the context of a request for a different remedy—to allow the students to sit for the final training exam." Based on its analysis of the letter, the district court concluded that the recruits had not requested a name-clearing hearing with sufficient clarity. It therefore granted summary judgment in favor of the City on the recruits' liberty-interest claim.

We agree with the district court's interpretation of the letter. To begin with, the letter contains no express request for a name-clearing hearing. And any implicit request for such a hearing is negated by the fact that the only "remedy" sought was to be able to sit for the final exam, not to have a hearing take place. As the district court correctly noted, the recruits' promise to "be forthright and cooperative to help you clear their names" is best read as a pledge to cooperate in the investigation rather than as a request for any hearing. We conclude, therefore, that the recruits did not sufficiently apprise the City of their desire for a name-clearing hearing in the August 12, 2018 letter.

The recruits' opening brief also lists a series of other communications that, they say, apprised the City of their desire to clear their names. These communications include an email dated August 21, 2018, in which the recruits' attorney told an attorney for the City that the recruits had "no intention" of "doing anything that would compromise their shot at a fair hearing." They also include a number of statements made in documents and formal proceedings as part of this litigation, such as in the recruits' complaint, in their brief in support of a TRO, and at the hearing on the TRO.

None of these communications, however, constitute an adequate request for a name-clearing hearing. As previously noted, this court's caselaw makes clear that to satisfy the requirement that a plaintiff request a name-clearing hearing, the plaintiff must "'sufficiently apprise' Defendants of his desire for a hearing to clear his name '*following the dissemination of the statements.*'" *Quinn*, 293 F.3d at 325 (emphasis added) (quoting *Ludwig*, 123 F.3d at 411). This limitation is consistent with the essence of what defines a stigma-plus injury, which is that the state's action damages the plaintiff's reputation while depriving him or her of some previously held right.

In the present case, the allegedly stigmatizing statements were not made until September 17, 2018, which was when the City announced that the recruits had been terminated for cheating and it publicly identified them. Yet all of the communications that the recruits cite took place on or before August 21, 2018. In other words, all of the recruits' communications with the City were made well before the stigmatizing statements were disseminated. We therefore conclude that none of them served as a sufficient request for a name-clearing hearing.

The recruits also argue, in the alternative, that whether they requested a name-clearing hearing is not determinative. They note that they *did* in fact receive hearings—the disciplinary

hearings that took place between August 17 and August 23, 2018. Thus, they say, the issue before us is the sufficiency of *those* hearings, rather than whether their request for a name-clearing hearing was adequate. The recruits assert that they had a right to rely on the disciplinary hearings in order to clear their names, and that they were not required to engage in the "futile act" of requesting a second, duplicative name-clearing hearing. Finally, the recruits contend that the disciplinary hearings that they did receive were "sham" hearings, with predetermined outcomes, and that this violated their liberty interests under the Due Process Clause.

We find this alternative argument unconvincing. To start with, the recruits rely almost exclusively on the Fifth Circuit's decision in *Rosenstein v. City of Dallas*, 876 F.2d 392 (5th Cir. 1989), *opinion reinstated in part*, 901 F.2d 61 (5th Cir. 1990), which this court has previously cited with approval. *See Quinn*, 293 F.3d at 324–25; *Ludwig*, 123 F.3d at 411. In that case, a Dallas police officer received several harassing telephone calls and named the plaintiff, a fellow police officer, as the person who made the calls. An investigation concluded that the plaintiff had in fact made the calls, and he was fired. The plaintiff then sought to challenge this decision, but he was denied any further consideration or hearing. He brought suit, primarily based on the denial of a name-clearing hearing. The Fifth Circuit ruled in the plaintiff's favor. It concluded that the plaintiff's request for access to the city's established appeal procedure after he was fired was sufficient to request a name-clearing hearing. *Rosenstein*, 876 F.2d at 396. The court held that because the city had denied the plaintiff access to its established appeal procedure and had failed to notify him of any available alternative procedure, it had violated his due process rights. *Id.* at 396–97.

*Rosenstein*, however, does not stand for the proposition that any request by a plaintiff for access to existing grievance procedures will serve as a request for a name-clearing hearing (or will

serve to waive such a requirement). Instead, it simply held that, *after* being fired, the plaintiff's request to use the city's grievance, appeals, or other review procedures was deemed an adequate request. Nothing in the *Rosenstein* analysis implies that the existence of *pretermination* disciplinary proceedings relieves a plaintiff of the requirement of requesting a name-clearing hearing *after* the stigmatizing statements are disseminated. To the contrary, some of the opinion's language suggests that the very opposite is true. *See id.* at 395 ("We have held that public officials do not act improperly in publicly disclosing charges against discharged employees, but they must *thereafter* afford procedural due process to the person charged." (emphasis added)). And, as discussed above, our own caselaw reinforces that conclusion. *See Quinn*, 293 F.3d at 325. In sum, the fact that the City had previously conducted disciplinary proceedings before firing the recruits did not relieve them of the obligation to request a name-clearing hearing before bringing a due process claim premised on the deprivation of a liberty interest.

Nor does the recruits' labeling of their disciplinary hearings as "sham" hearings rescue their claim. The recruits cite *Wagner v. City of Memphis*, 971 F. Supp. 308 (W.D. Tenn. 1997), and *Bettio v. Village of Northfield*, 775 F. Supp. 1545 (N.D. Ohio 1991), for the proposition that a "sham" hearing with a predetermined outcome will violate a plaintiff's liberty interest. Both cases involved pretermination hearings that the courts evaluated under *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), in which the Supreme Court set out the requirements for pretermination procedures that are due to public employees. In both instances, the courts held that the pretermination hearings were sufficiently flawed—in one case because the outcome of the hearing was "predetermined regardless of the proof presented," *Wagner*, 971 F. Supp. at 319, and, in the other, because the hearing was presided over by officials who knowingly brought false

charges against the plaintiff, *Bettio*, 775 F. Supp. at 1564–65—that they were "sham" proceedings that failed to accomplish their necessary functions.

Even leaving aside that *Wagner* and *Bettio* are nonprecedential district-court opinions, the main difference between those cases and the present matter is that those opinions involve property interests rather than liberty interests. That is, in both cases the courts determined that the pretermination hearings did not meet the requirements set out under *Loudermill*, such that firing the employees under those circumstances was (or would be, if the allegations were proven) a deprivation of property without due process. *See Wagner*, 971 F. Supp. at 316–19; *Bettio*, 775 F. Supp. at 1561–65. Neither case purported to reach any holding about what is required of a name-clearing hearing when a plaintiff brings a stigma-plus claim premised on a liberty interest. And neither comes close to supporting the conclusion that if a plaintiff is fired in a pretermination hearing that he or she believes to be a "sham," that such a belief excuses the plaintiff from the requirement of requesting a future name-clearing hearing after any stigmatizing statements are made in connection with his or her firing.

### III. CONCLUSION

Accordingly, we conclude that the recruits have failed to raise a genuine dispute of material fact as to whether they were deprived of a liberty interest without due process. We therefore **AFFIRM** the district court's grant of summary judgment in favor of the City.